## CHICAGO, M. & ST. P. RY. CO. v. CARPENTER.

### (Circuit Court of Appeals, Eighth Circuit. May 15, 1893.)

### No. 178.

**1. RAILROAD COMPANIES—NEGLIGENCE—OVERHANGING STRUCTURES.**

Railway companies are under an obligation to all persons who have a right to be on top of their trains in the discharge of any duty to so construct overhead bridges that they will not cause any peril that can easily and without any great outlay be avoided; and if any dangerous overhanging structures are for any reason maintained, it is the company's duty, in the exercise of ordinary care, to give warning, either verbally or by suspended "whip lashes," to persons thus exposed.

**2. CARRIERS—NEGLIGENCE—INJURIES TO CATTLE MEN—CONTRIBUTORY NEGLIGENCE.**

Plaintiff, who was in charge of car loads of stock on a freight train, went forward while the train had stopped to examine his stock. The train started suddenly, and, finding that its speed would be too great to admit of his boarding the caboose from the ground, he got upon the top of the train, and began to walk on the cars back to the caboose, as it was customary for cattle men to do under the circumstances. He did not look around towards the front of the train, and was soon struck by a bridge, of whose location he had no knowledge or warning, and was severely injured. *Held*, that he could not be said, as matter of law, to be guilty of contributory negligence.

**3. SAME—EVIDENCE OF CUSTOM.**

Evidence is admissible that it was customary for cattle men, under such circumstances, to walk on the top of the cars, and that the railroad company was aware of such custom, and acquiesced in it.

**4. SAME—INSTRUCTIONS—DEGREE OF CARE.**

Defendant cannot complain of an instruction that the plaintiff was a passenger, and that carriers must exercise the highest degree of care towards passengers, where the court adds that the general rule should not be applied to one who becomes a passenger on a freight train for the purpose of looking after his stock, because the circumstances are different.

In Error to the Circuit Court of the United States for the Northern District of Iowa.

This was an action by C. C. Carpenter against the Chicago, Milwaukee & St. Paul Railway Company, in which there was judgment for plaintiff, and defendant brings error. Affirmed.

Statement by THAYER, District Judge:

This case was submitted to the jury on testimony which tended to establish, and practically did establish, the following state of facts: Carpenter, the defendant in error, is a farmer and stock dealer. On December 3, 1889, he started from Marion, Iowa, for Chicago, Ill., in charge of two car loads of live stock, over the railroad of the plaintiff in error. He was accompanied by another stock dealer and acquaintance of his, named Paul, who also had two car loads of live stock. The four cars of stock in question were placed at the forward end of the train, next to the engine. The train contained 23 cars, including the caboose. At a station called Elwood the train stopped to take coal and water, at about 3 o'clock P. M., and, as is customary with persons in charge of stock, Carpenter went forward from the caboose, where he had been riding, to examine the stock. Before he had completed the examination of the four cars, the engine gave the signal for starting, and pulled out on a slight down grade. Finding that it would be impossible to go back by the side of the train and to board the caboose, owing to the speed it would attain, he climbed upon one of the forward cars, intending to walk back to the caboose along the running board on the roof of the cars, as brakemen are in the habit of doing. On reaching the top of the car on which he had

climbed, he stopped for a few moments to rest,"and then started back. He had walked some distance from the engine on the running board, when he was struck by an overhead bridge, was rendered unconscious, and was severely injured. The bridge was 2¾ miles east of Elwood station, and the train, after it pulled out, moved at the rate of 17 or 18 miles per hour, and would cover the intervening space in 8 or 9 minutes. To one standing on the roof of a car and looking in that direction, the bridge was visible from the west for three-quarters of a mile. At the time of the accident Carpenter was an active man, 37 years old, and was well accustomed to walking on the tops of cars while they were in motion. He was 5 feet 8 or 9 inches in height. The car on which he was walking when struck was 12 feet and 9 inches high. The lowest portion of the overhead bridge, over the center of the track, was 17 feet and 10 inches above the tops of the rails. It was admitted by the defendant in error that after he started to walk back to the caboose, he did not turn to look in the direction that the train was moving, but he denied having any knowledge of the bridge, or of its dangerous character. There was also considerable testimony in the case, that was admitted over the objection of the plaintiff in error, which tended to show that it is customary among stockmen when traveling on freight trains in charge of stock to go forward and examine their stock when the train halts at stations, and to go back to the caboose over the tops of the cars, if, in consequence of the sudden starting of the train or other cause, they are unable to board the caboose in any other manner; and that railway companies are in the habit of permitting such practice on the part of persons on their trains who have charge of live stock. There was a verdict against the plaintiff in error in the sum of $4,250, whereupon it sued out a writ of error.

Charles B. Keeler, (Burton Hanson, on the brief,) for plaintiff in error.

Henry Rickel, (Charles A. Clark and E. H. Crocker, on the brief,) for defendant in error.

Before CALDWELL and SANBORN, Circuit Judges, and THAYER, District Judge.

THAYER, District Judge, (after stating the facts.) It was correctly stated by counsel for the plaintiff in error on the argument of the case, that the most important and the underlying question presented by the record, is whether, as a matter of law, the defendant in error was guilty of contributory negligence, either in getting on the top of the train or in walking thereon towards the caboose without turning to look in the opposite direction for overhead bridges or other obstructions. If it is conceded that he had the right, under the circumstances disclosed by the evidence, and as the jury have found, to get on the top of the train, and that he was not guilty of culpable negligence in so doing, then we have no doubt that the railway company owed him a duty with respect to its overhead bridges which the evidence tended to show had not been performed or discharged. The weight of judicial opinion, as well as of sound reason, is in favor of the view, that railway companies are under an obligation to all persons who have a right to be on the top of their trains in the discharge of any duty, to so construct their overhead bridges or other overhanging structures adjacent to their tracks that they will not expose such persons to unnecessary risks or to perils that can easily and without any great outlay be avoided. If, for any reason, structures of the kind last mentioned are maintained, which do expose persons who have a right to be on the top

of moving freight trains to unusual risks, (such as the liability to be knocked off,) then we think that the exercise of ordinary care requires of a company which maintains such a structure to give some warning, either verbally or by whip lashes, to all of those persons who, in the discharge of their duties, are liable to sustain injury in consequence of such structures. Railroad Co. v. Irwin, (Kan.) 16 Pac. Rep. 146; Railroad Co. v. Rowan, 104 Ind. 88, 3 N. E. Rep. 627; Railroad Co. v. Johnson, 116 Ill. 206, 4 N. E. Rep. 381; Railroad Co. v. Wright, (Ind. Sup.) 17 N. E. Rep. 584; Clark v. Railroad Co., 28 Minn. 128, 130, 9 N. W. Rep. 581; Railroad Co. v. Welch, 52 Ill. 183; Flanders v. Railway Co., (Minn.) 53 N. W. Rep. 544; Beach, Contrib. Neg. 364.

There are some courts which apparently entertain a different view, (Baylor v. Railroad Co., 40 N. J. Law, 23; Railroad Co. v. Stricker, 51 Md. 47; Railroad Co. v. Sentmeyer, 92 Pa. St. 276; Gibson v. Railway Co., 63 N. Y. 449;) but we think that the authorities first cited inculcate the better doctrine.

We recur, then, to the question first proposed, was the defendant in error guilty of culpable negligence in getting on the top of the train, and should the trial court have so declared as a matter of law? Intimately connected with this inquiry is the further question whether the circuit court erred in admitting the testimony as to what was the usual practice of stockmen when traveling on freight trains in charge of stock; and the two questions are so closely related that they must be considered together. It will not be contended that a custom will excuse a person for having been negligent, any more than it will justify him in committing a crime. But a custom may sometimes be proven for the purpose of showing that a person, under given circumstances, was not guilty of that want of ordinary care which the law terms negligence; and instances are not wanting where such proof has been admitted. Thus, in Doyle v. Railway Co., 42 Minn. 79, 43 N. W. Rep. 787, the issue being whether a railway company was negligent in using partially worn rails for a side track, it was allowed to justify its conduct in that respect by showing that other railway companies were in the habit of using partially worn rails for similar sidings. In Kolsti v. Railway Co., 32 Minn. 133, 19 N. W. Rep. 655, where the issue was whether the defendant had been guilty of negligence in the use of certain fastenings on one of its turntables, it was held competent to show that the fastenings were similar to those in habitual use on other roads. And in a case heretofore cited (Flanders v. Railway Co., [Minn.] 53 N. W. Rep. 544) it was held competent for a brakeman, who was accused of negligence in descending from a car while it was in motion, to show that it was customary for brakemen to climb up and to descend from cars while in motion, for the purpose of opening and closing switches; and that such evidence was legitimate although not conclusive to refute the charge of negligence. We might, no doubt, find other decisions which inculcate the same doctrine.

In the ordinary transactions of life all men are required at times to assume some risks, and to confront dangers that are incident to

their several vocations. What an active and experienced man may sometimes have occasion to do, and may do without being guilty of culpable negligence, another decrepit or inexperienced person might not do without being guilty of gross carelessness. The quality of every act should be judged by its environment. The fact that a man assumes a dangerous position, or incurs a risk, is not always conclusive evidence of negligence. Circumstances may have justified the assumption of the particular risk. A man is guilty of culpable negligence when he does or omits to do an act that an ordinarily prudent person in the same situation, and with equal experience, would not have done or omitted to do; or when he voluntarily exposes himself to a danger, which there was no occasion to incur in the proper discharge of his duties.

In determining the question of negligence in a given case (where the quality of the act in the respect of its being negligent or otherwise is not obvious) it is always proper to consider what other persons of ordinary prudence, who are engaged in the same calling, under like circumstances are in the habit of doing or ordinarily do. This is the universal test of negligence.

In view of these considerations, we have reached the conclusion that the testimony relative to the custom in vogue among persons having charge of live stock on freight trains was properly admitted, both for the purpose of rebutting the charge of contributory negligence, and for the purpose of showing that railway companies permit stockmen to pass over the tops of freight trains on the running boards provided for that purpose, when the vicissitudes of the journey render it necessary to do so, to reach their stock and attend to it, or to reach the caboose. As there was considerable testimony on the trial which tended strongly to show that persons in charge of live stock on freight trains frequently find it necessary, in attending to their stock properly, to get on the top of a train, and to walk back to the caboose, or to ride on the top of a car for some distance till the train stops; and as it further tended to show that it was a common practice on the defendant company's road, as well as upon other railroads, for stockmen to get on the top of a train, and to walk back to the caboose, when it becomes necessary to do so; and as it also tended to show that the company had never made any objections to such practice on the part of persons in charge of stock,—we are constrained to hold, that it was the province of the jury to decide, in the light of all of the evidence, as to the existence of the custom, and as to whether it was necessary for Carpenter, in the proper discharge of his duty, on the occasion in question, to get on the top of the train, and whether he went there rightfully in view of the existing usage, and in so doing exercised ordinary care and circumspection. A careful examination of the record and the charge (waiving mere verbal criticism) satisfies us that the circuit court tried the case strictly in conformity with these views, and in so doing no error was committed.

The next point to be considered is the contention of counsel that the defendant in error was guilty of contributory negligence, and

that the court should have so declared, in walking towards the caboose without turning to look for overhanging structures in the direction in which the train was moving. It is obvious, we think, that we cannot properly hold it to have been his duty to take the same precautions to discover overhead obstructions which persons are required to take to discover approaching trains when crossing a railroad track at grade. The situation of a person on the top of a moving train, where he has a right to be, is quite different from that of a person crossing a track at grade, and different considerations apply in determining what care he should exercise. In the present case Carpenter denied that he had any notice that there was a bridge ahead which was too low to permit a person to pass under while standing erect, and it is not apparent from the record that he had knowledge of its existence or exact location, or that he was in close proximity to such a structure. Furthermore, a person in his situation, walking on the top of a train in rapid motion, would very naturally be occupied in maintaining his balance, and in seeing that he made no misstep. Under the circumstances, we are not prepared to hold that it was his duty to assume that there were dangerous structures ahead, and that he was guilty of culpable negligence in failing for a few minutes to turn and look for such structures. On the contrary, we think that the question of negligence in this respect was properly a question for the jury, and that the circuit court did right in submitting it to the jury.

Some further subordinate errors have been assigned, which, on examination, do not seem to be well founded. In the first place, it is urged that the court assumed that it was the custom of stockmen to ride on the top of freight trains, instead of leaving that question to the jury. We think that this criticism of the charge is not justified by a fair interpretation of the language employed by the trial judge. In the eleventh, twelfth, and thirteenth paragraphs of the charge the issue as to the existence of the alleged custom was distinctly submitted to the jury, and the instructions, taken as a whole, clearly show that the court treated that question as one to be determined by the triers of the fact.

In the second place, is is urged that the court erred in instructing the jury, in substance, "that by the contract under which the cattle were shipped, Carpenter had a right to be on the train for the purpose of taking care of his stock, and that it was his duty to take care of it under the terms of the contract, and to give it such attention as it might need during the journey." With reference to this contention, it is only necessary to say that the trial court was undoubtedly right in its interpretation of the shipping contract. It is clearly manifest from several of its provisions that the parties contemplated that the owner of the live stock, or his agent, should accompany the cattle, and attend to them at every convenient opportunity, and in the usual and customary way.

Finally, it is urged that, although Carpenter was a passenger, yet that the court erred, under the circumstances of this particular case, in charging that the railway company owed him the highest degree of care. No authority is cited in support of this proposition.

While the court did charge that 'Carpenter was a passenger, and that the general rule was that carriers of passengers must exercise the highest degree of care, yet it qualified this general proposition by the further statement that the jury should enforce the general rule "with sound judgment and clear reference to the facts of the particular case before them," and that they ought not to apply "the general rule as to the transportation of a passenger on a passenger train to a passenger who comes upon a stock train for the purpose of looking after his stock, because the circumstances are entirely, or at least largely, different." In view of the limitation put upon the general doctrine, we fail to see that the plaintiff in error is entitled to complain, even if it is right in its contention that a carrier does not owe the same degree of care to a person riding on a freight train in charge of stock, which it owes to an ordinary passenger.

Upon the whole, we find no substantial error in the record, and the judgment of the court below is therefore affirmed.