# McGREGOR v. GREAT NORTHERN RAILWAY COMPANY.

## (154 N. W. 261.)

**Contributory negligence — evidence of — subject to different conclusions — as to facts — or conclusions drawn from the facts — one of fact for jury.**

1. When the evidence in regard to contributory negligence is such that different minds may reasonably draw different conclusions, either as to the facts or the conclusions to be drawn from the facts, then the question of contributory negligence is one of fact to be determined by the jury.

**Shipment of horses — care taker — riding in stock car instead of caboose — accident — contributory negligence — matter of law.**

2. It is *held* that, under the terms of the contract and the circumstances of the case, a care taker of a shipment of horses, who at the time of the accident was riding in the stock car instead of in the caboose, was not guilty of contributory negligence as a matter of law.

**Shipment of live stock — person in charge — riding under shipping contract — passenger for hire.**

3. A person in charge of live stock, riding under a contract which evidences his right of transportation on the train transporting the stock shipment, and contemplates his carriage to care for the stock, is a passenger for hire.

**Stock shipment under contract — care taker riding in stock car — mode of transportation — risks reasonably incident thereto — assumption of — occurrences — unnecessary — unusual — train — handling of — risks and dangers — not assumed.**

4. A person so traveling will be deemed to have assumed all risks reasonably incident to the mode of transportation utilized, but not those risks and dangers produced by unnecessary and unusual occurrences not incident to the proper handling of a train of that kind.

**Railway company — must exercise care — safety of such a passenger — obligation — not relieved from.**

5. A railway company is not relieved from its obligation to exercise great care for the safety of such passenger.

**Proximate cause — use of term by court — further definition — not necessary — unless requested — not error.**

6. It was not reversible error for the court to use the term "proximate cause" without otherwise defining it, in absence of a request for an appropriate instruction.

**Instructions to jury — considered as a whole.**

7. The court's instructions to the jury should be considered and construed as a whole.

**Instructions — correct as far as given — if further are desired — should be requested.**

8. Where an instruction is correct as far as it goes, a party to the action who deems the same not sufficiently explicit should present requests for more specific and comprehensive instructions.

**New trial — motion for — affidavit — diligence — acts performed — must be specific — must be shown — province and duty of court — general assertions of diligence — insufficient — opinions — conclusions.**

9. An affidavit, presented to show diligence, in support of a motion for new trial on the ground of newly discovered evidence, should specifically state the acts performed in order that the court may determine what diligence was used, and mere general assertions of diligence are insufficient, as they constitute only the opinions or conclusions of the affiant.

**New trial — motion for — newly discovered evidence — court — sound judicial discretion — addressed to — appellate court — will not interfere — unless abuse is shown.**

10. A motion for new trial on the ground of newly discovered evidence is addressed largely to the sound, judicial discretion of the trial court, and the appellate court will not interfere unless a manifest abuse of such discretion is shown.

Opinion filed September 16, 1915.

Appeal from a judgment and an order denying a new trial of the District Court of Ward County; *Leighton,* J. Defendant appeals.
Affirmed.

*Dudley L. Nash* and *Murphy & Toner,* for appellant.

The evidence shows that plaintiff was guilty of contributory negligence, and the court erred in not granting defendant's motion for a directed verdict. The plaintiff voluntarily, and without cause or provocation, placed himself in an unusual and dangerous place. He knew this. It was obvious. He had ample opportunity to go into the caboose

after the first smash-up claimed by him, and ride therein in the usual manner, and as the men did.   He elected to remain in the stock car and take his chances.   2 White, Personal Injuries, § 796; Ashbrook v. Frederick Ave. R. Co. 18 Mo. App. 290; Carroll v. Inter-State Rapid Transit Co. 107 Mo. 653, 17 S. W. 889, 4 Am. Neg. Cas. 686; Norfolk & W. R. Co. v. Ferguson, 79 Va. 241; Little Rock & Ft. S. R. Co. v. Miles, 40 Ark. 298, 48 Am. Rep. 10; Files v. Boston & A. R. Co. 149 Mass. 204, 14 Am. St. Rep. 411, 21 N. E. 311, 3 Am. Neg. Cas. 856; Jackson v. Crilly, 16 Colo. 103, 26 Pac. 331; Higgins v. Cherokee R. Co. 73 Ga. 149; Foley v. Boston & M. R. Co. 193 Mass. 332, 7 L.R.A. (N.S.) 1076, 79 N. E. 765; Cottrell v. Pawtucket Street R. Co. 27 R. I. 565, 65 Atl. 269; Tuley v. Chicago, B. & Q. R. Co. 41 Mo. App. 432; Rucker v. Texas & P. R. Co. 61 Tex. 499; Brown v. Scarboro, 97 Ala. 316, 12 So. 289; International & G. N. R. Co. v. Copeland, 60 Tex. 325, 8 Am. Neg. Cas. 504; Wait v. Omaha, K. C. & E. R. Co. 165 Mo. 612, 65 S. W. 1028; Hedrick v. Missouri P. R. Co. 195 Mo. 104, 93 S. W. 268, 6 Ann. Cas. 793; Pennsylvania R. Co. v. Langdon, 92 Pa. 21, 37 Am. Rep. 651, 10 Am. Neg. Cas. 215; Houston & T. C. R. Co. v. Clemmons, 55 Tex. 88, 40 Am. Rep. 799; Peoria & R. I. R. Co. v. Lane, 83 Ill. 448, 9 Am. Neg. Cas. 222; Florida Southern R. Co. v. Hirst, 30 Fla. 1, 16 L.R.A. 631, 32 Am. St. Rep. 17, 11 So. 506; Bromley v. New York, N. H. & H. R. Co. 193 Mass. 453, 79 N. E. 775.

The general rule as to diligence seems to be that the application of a party for a new trial, on the ground of newly discovered evidence, must show what diligence he exercised in preparing for the first trial, how the new evidence was discovered, and why it was not discovered before the first trial, and such facts as to make it clear that the failure to produce the new evidence was not the fault or want of diligence on the part of the applicant.   1 Spelling, New Trials, p. 363, § 218.

The defendant's affidavits used upon the motion do not contain mere conclusions, but are statements of ultimate facts, upon the subject of diligence.   This is all the rule requires.   Boggess v. Read, 83 Iowa, 548, 50 N. W. 43.

Upon the question of newly discovered evidence, the rule seems to be that if the proposed newly discovered evidence brings to light some new fact bearing upon the main question, and that it would be likely to

change the result, a new trial should be granted. 1 Spelling, New Trials, p. 367, and cases cited; Beery v. Chicago & N. W. R. Co. 73 Wis. 197, 40 N. W. 687.

Or, if such evidence be material on that issue alone on which the verdict is based, it is sufficiently material to justify the granting of a new trial. 1 Spelling, New Trials, p. 367, and cases cited; McMullen v. Winfield Bldg. & L. Asso. 4 Kan. App. 459, 46 Pac. 410.

And to deny a new trial under such conditions, the court must be of the opinion that the admission of the new evidence would not cause a different result. 1 Spelling, New Trials, p. 371.

"In order to warrant a new trial for material newly discovered evidence, it is not necessary that it bear exclusively upon the question of the plaintiff's right to a judgment for some amount. It will be sufficient if it affect the amount of recovery. 1 Spelling, New Trial, § 223; Jensen v. Hamburg American Packet Co. 23 App. Div. 163, 48 N. Y. Supp. 630.

Courts cannot refuse a new trial on the ground merely that the proposed new evidence is cumulative, or impeaching, or both, in character. All relevant, competent, and material new discovered evidence must of necessity be more or less cumulative or impeaching; but if it be of sufficient probative force and materiality to probably change the result upon retrial, it is sufficient, or at least a new trial should not be denied because of the fact that it seems to be cumulative or impeaching. 1 Spelling, New Trials, § 225, and cases cited; Wilson v. Seaman, 15 S. D. 103, 87 N. W. 577; Oberlander v. Fixen, 129 Cal. 690, 62 Pac. 254.

Where evidence of such a nature appears of such strength and probative force and value as to be decisive of the result, the motion should be granted. Pengilly v. J. I. Case Threshing Mach. Co. 11 N. D. 249, 91 N. W. 63, 12 Am. Neg. Rep. 619; Heyrock v. McKenzie, 8 N. D. 601, 80 N. W. 762; 1 Spelling, New Trials, § 227, and cases cited; Sulman v. Dolan, 24 S. D. 32, 123 N. W. 72; State v. Laper, 26 S. D. 151, 128 N. W. 476.

The newly discovered evidence here offered by the defendant is material, and is of such probative force and value that the court must say, with reason, that in all probability it would change the result upon a further trial. Delmas v. Martin, 39 Cal. 555; Croner v. Farmers'

F. Ins. Co. 18 App. Div. 263, 46 N. Y. Supp. 108; Louisville & N. R. Co. v. Bickel, 97 Ky. 222, 30 S. W. 600; Texas & P. R. Co. v. Barron, 78 Tex. 421, 14 S. W. 698; Van Wagenen v. Carpenter, 27 Colo. 444, 61 Pac. 698.

It was the duty of the trial court to explain the meaning and application of the technical term "proximate cause" to the jury, and its failure to do so was prejudicial error. 2 Thomp. Trials, § 2327; Chappell v. Allen, 38 Mo. 213; Clarke v. Kitchen, 52 Mo. 316.

*E. R. Sinkler,* for respondent.

The affidavits produced on defendant's motion for a new trial are purely impeaching, and the rule is that such evidence does not furnish good ground for a new trial. Libby v. Barry, 15 N. D. 286, 107 N. W. 972; Heyrock v. McKenzie, 8 N. D. 601, 80 N. W. 762; Stoakes v. Monroe, 36 Cal. 388, 2 Mor. Min. Rep. 246; 14 Enc. Pl. & Pr. p. 791; Tuberville v. State, — Miss. —, 38 So. 333; State v. McKenzie, 177 Mo. 699, 76 S. W. 1015; People v. Sullivan, 40 Misc. 308, 81 N. Y. Supp. 989.

"Where defendant claimed an alibi, and introduced several witnesses who testified to having seen him at a certain place, newly discovered evidence that defendant was seen at such place talking to a witness who had denied seeing him there is not ground for new trial." Whitfield v. State, 40 Tex. Crim. Rep. 14, 48 S. W. 173.

A motion for a new trial on the ground of newly discovered evidence is addressed to the sound judicial discretion of the trial court, and its decision is conclusive upon the question unless it clearly appears that the discretion vested in the trial court has been abused. Heyrock v. McKenzie, 8 N. D. 601, 80 N. W. 762; Barrett v. Third Ave. R. Co. 45 N. Y. 628; Hayne, New Tr. & App. 87.

Application for new trial upon such ground is always looked upon with distrust and disfavor. Braithwaite v. Aiken, 2 N. D. 62, 49 N. W. 419; Nelson v. Carlson, 54 Minn. 90, 55 N. W. 821; Chalmers v. Sheehy, 132 Cal. 459, 84 Am. St. Rep. 62, 64 Pac. 710.

Where newly discovered evidence is merely impeaching and cumulative in its character, it is not ground for a new trial. Reid v. State, 103 Ga. 572, 30 S. E. 248; Whitehead v. Breckenridge, 5 Ind. Terr. 133, 82 S. W. 698; Corley v. New York & H. R. Co. 12 App. Div. 409, 42 N. Y. Supp. 941; Beals v. Cone, 27 Colo. 473, 83 Am. St. Rep. 92,

62 Pac. 948, 20 Mor. Min. Rep. 591; Knuffke v. Knuffke, 8 Kan. App.
857, 56 Pac. 326.; Baxter v. Hamilton, 20 Mont. 327, 51 Pac. 265;
Libby v. Barry, 15 N. D. 286, 107 N. W. 972; Huster v. Winn, 8
Okla. 569, 58 Pac. 736; Curran v. A. H. Strange Co. 98 Wis. 598, 74
N. W. 377; Harvey v. Ivory, 35 Wash. 397, 77 Pac. 725; 14 Enc. Pl.
& Pr. 791.

A new trial will not be granted for newly discovered evidence which
is merely cumulative. Wood v. Moulton, 146 Cal. 317, 80 Pac. 92;
Patterson v. San Francisco & S. M. Electric R. Co. 147 Cal. 178, 81
Pac. 531; Halstead v. Horton, 38 W. Va. 727, 18 S. E. 953.

And especially where such evidence, by the exercise of reasonable
diligence, could have been produced at the trial. Knollin v. Jones, 7
Idaho, 466, 63 Pac. 638; Guerold v. Holtz, 103 Mich. 118, 61 N. W.
278; Ernster v. Christianson, 24 S. D. 103, 123 N. W. 711; Hahn v.
Dickinson, 19 S. D. 373, 103 N. W. 642; State v. Reilly, 25 N. D. 339,
141 N. W. 720.

Affidavits upon such a motion must contain a statement of the facts
showing the diligence used. A mere general statement that the party
used due diligence to find and ascertain the facts before the trial is the
statement of an opinion or conclusion. The facts themselves should be
brought before the court by the affidavits, and then it is for the court to
conclude as to their nature, force, and value, upon the question of dili-
gence. St. Louis Southwestern R. Co. v. Stanfield, 63 Ark. 643, 37
L.R.A. 659, 40 S. W. 126, 2 Am. Neg. Rep. 298; B. S. Flersheim Mer-
cantile Co. v. Gillespie, 14 Okla. 143, 77 Pac. 183; Bradley v. Norris,
67 Minn. 48, 69 N. W. 624; Goracke v. Hintz, 13 Neb. 390, 14 N. W.
379; Heady v. Fishburn, 3 Neb. 263.

It is not sufficient to allege in affidavit to support a motion for new
trial upon this ground, that the party could not with reasonable dili-
gence procure such testimony before the trial. The affidavit must state
and specify what particular efforts the party made before the trial, to
produce the testimony. Tomer v. Densmore, 8 Neb. 384, 1 N. W. 315;
Graham v. Payne, 122 Ind. 403, 24 N. E. 216; Keisling v. Readle, 1
Ind. App. 240, 27 N. E. 583; Hamm v. Romine, 98 Ind. 77.

The burden of proof was upon defendant to show contributory negli-
gence on the part of plaintiff, by a fair preponderance of all of the evi-
dence—not by or from the evidence of the defendant, but from all of

the evidence. The court so very properly instructed the jury in this case. 11 Enc. Pl. & Pr. p. 217; Louisville & N. R. Co. v. Smith, 129 Ala. 553, 30 So. 571; Mobile, J. & K. C. R. Co. v. Bromberg, 141 Ala. 258, 37 So. 395; Missouri, K. & T. R. Co. v. Millam, 20 Tex. Civ. App. 688, 50 S. W. 417.

The failure of the court to define to the jury in its instruction, the technical meaning of the term "proximate cause," was not error. It amounted to a nondirection of the jury, and is very dissimilar to a misdirection.

It is a general rule in all cases, subject to few exceptions, that mere nondirection, in the absence of request, does not constitute error. 11 Enc. Pl. & Pr. 217.

CHRISTIANSON, J.    The plaintiff, R. R. McGregor, brought this action to recover damages for personal injuries alleged to have been sustained by him through the negligence of the defendant railway company, while he was traveling in charge of stock upon one of its freight trains. The plaintiff claims that on March 11, 1913, while rightfully upon said train of the defendant and in charge of a carload of horses, then being shipped from St. Cloud, Minnesota to Glasgow Montana, and while riding on such train engaged in the discharge of his duties as care taker accompanying such stock shipment in accordance with the shipping contract, the defendant negligently managed the train by stopping the same almost instantly while the train was running at a speed of about 40 miles per hour, with the result that the horses in the charge of the plaintiff were thrown to the floor of the car, thereby breaking the partitions and mangers in said car. That thereupon the plaintiff, with the assistance of the employees of the defendant in charge of said train, went to the car for the purpose of taking care of said horses and getting them on their feet, and that while so engaged and before the plaintiff had an opportunity to get out of the car and into the caboose attached to the train, the defendant's employees started the train and caused the same to proceed at a great rate of speed, and that while so proceeding the defendant's employees again grossly, negligently, and carelessly brought the said train to an almost instant stop with the result that one of the horses in the car was thrown upon the plaintiff, thereby pinioning him to the floor of the car resulting in

severely and permanently injuring the plaintiff. The defendant denied negligence and further charged that plaintiff's injuries, if any, were caused through plaintiff's own carelessness in placing himself in a dangerous and unsafe position while riding upon the train, in this, that the plaintiff without any cause or justification whatever, went into the car where certain horses and stock were being transported, and while there, and on account of the ordinary and usual handling and movement of said car and train, plaintiff was brought in contact with the horses, and suffered the injuries complained of. At the close of all the testimony, the defendant moved for a directed verdict based principally on the ground that plaintiff was guilty of contributory negligence. The motion was denied, and the cause submitted to the jury, which returned a verdict in favor of the plaintiff, in the sum of $1,548.20. The defendant made an alternative motion for judgment notwithstanding the verdict or a new trial, which was denied, and this appeal is taken from the judgment and from the order denying defendant's motion for judgment notwithstanding the verdict or a new trial.

The evidence shows that on March 8, 1913, the plaintiff entered into a contract with the defendant railway company, for the shipment of ten head of horses from St. Cloud, Minnesota, to Glasgow, Montana. Under the terms of this contract, it was agreed that "the shipper will . . . feed, water, and *attend same* at his own expense and risk while in the stock yards of the carrier waiting shipment or *while in the cars.* . . ." The contract also provided for a limitation of the value of the horses carried, and further provided that the contract does not entitle "the holder or the parties named therein to ride in the cars of any train except the train in which the stock referred to is drawn or taken." The contract, however, contains no provision requiring the shipper to ride in the caboose attached to the train. On March 11, 1913, the plaintiff was riding in the caboose of the freight train in question, between Devils Lake and Minot, in this state. The train had two engines. About 2 miles west of Churches Ferry, the train came to a sudden stop by reason of the engines pulling apart. The plaintiff testifies that the shock was so violent that while he was sitting in the caboose he fell on the floor. According to the plaintiff's testimony, the train at this time was running from 35 to 40 miles an hour, while the defendant's witnesses place the speed at from 20 to 25 miles an hour. When the train

stopped, the plaintiff went back to his car, which was the second car from the caboose, to see about his stock, and found that the horses had been knocked down and that one of them was still down and apparently unable to get up, and that thereupon the plaintiff, and a brakeman named Scheideeger, went into the car and finally succeeded in getting the horse up. The brakeman, Scheideeger, testified: "I was asked by the conductor to help this man (referring to plaintiff) get up the horses." The partitions had been broken down, and plaintiff started to nail the planks up again. Before this work was finished, and while he was so engaged, the train started. The brakeman still remained in the car. No request was made of the plaintiff to cease his labors, or to leave the car, and apparently no opportunity given him or the brakeman to get out of the car. After the train had proceeded for some distance, and while plaintiff was standing in an upright position at the side of the car, near the door, engaged in nailing the planks at the side of the car, the train again came to a sudden or violent stop for the same cause which occasioned the first stop; *viz.,* the two engines pulled apart. At the time of the second stop, the train according to plaintiff's testimony was running at a speed of from 20 to 30 miles per hour, and according to the testimony of members of the train crew at a considerable less speed. Plaintiff testifies that at the second stop, one of the horses fell upon him and pinioned him to the floor of the car, and that his brother, who was in the car at the time, and an emigrant traveling on the same train, assisted in getting the horses up after the second stop. Plaintiff claims that his back and thigh were bruised, his toes trampled, and a lump made upon his back; which he claims still was there at the time of the trial; that he feels weak and has pain, does not sleep well at night, and cannot do hard work. The brakeman, Scheideeger, testifies that he was standing in the door of the car at the time of the second stop, and that the plaintiff was standing against the south wall of the car. He says that he could not see plaintiff at the time of the stop, but could see him in a few minutes afterwards, and that when he saw him, plaintiff was still standing against the wall; that he could see some of the horses and that none of them were knocked down. The brakeman, Scheideeger, further testified: "Q. Was there much of a jar when it stopped the second time? A. Quite severe, yes." The engineer testified that both stops were caused by the head engine breaking off from the rear engine,

occasioning what he called an "emergency stop." That he examined the couplings to see if he could find why they would not stay coupled; that the coupling was not more than ordinarily worn, and was the standard coupling used by railways. On cross-examination he testified that it was a usual or customary thing to couple engines together, but not a usual or customary thing to have them break apart. That he did not know what caused the breaking apart of the engines; that there must have been something the matter to cause them to separate, but he did not know what it was. He further testified that the front engine, after the second stop, was not attached again but went ahead of the train to Leeds. That the reason for this was that they knew something was wrong, and thus were afraid the front engine would break loose again.

The conductor, in answer to questions as to the reason for the engines breaking apart, testified: "As near as I can get to it, it is the difference in the size of the wheel of the engines,—the driving wheels of the engines. The bigger engine ahead and the smaller wheels behind it, and that makes the coupling more or less higher. The wheels were not the same size. That is the only way I can figure it out. There was one large and one small engine."

While numerous errors are assigned, only four are discussed in the brief, and hence these alone will be considered, as this court has repeatedly held that errors assigned, but not discussed in the brief, will be deemed abandoned. Pendroy v. Great Northern R. Co. 17 N. D. 433, 117 N. W. 531; Foster County Implement Co. v. Smith, 17 N. D. 178, 115 N. W. 663.

Appellant asserts that plaintiff was guilty of contributory negligence as a matter of law, and that defendant was entitled to a directed verdict. Appellant's counsel say: "It appears from the evidence of the plaintiff that prior to the first stop he was riding in the caboose. It is common knowledge that a caboose is furnished with all stock trains, for the purpose of accommodating the passengers whether riding on stock contracts or otherwise. That a person riding in or on top of a box car is not where he belongs." Appellant's counsel assert that plaintiff rode in a place where he had no right to ride; a place not intended for passengers, which was more dangerous than the caboose, and that therefore plaintiff is chargeable with contributory negligence as a matter of law, and cannot recover for injuries resulting to him by reason of his assuming such

extra hazard. Numerous authorities are cited in support of this argument, but a careful examination of all the authorities cited show that none of them are in point. The authorities cited were cases wherein passengers voluntarily, unnecessarily, and intentionally rode in places not intended for passengers, such as baggage cars, on top of a caboose or box car, or on an engine. In no case cited by appellant's counsel (with one exception) did the person injured ride on a drover's pass, or stock shipment contract. In the cases cited the persons injured, without any necessity or duty, and without any authority on the part of the railroad company to so do, voluntarily and unnecessarily exposed themselves to extra hazards by riding in places where passengers were not intended, or expressly forbidden, to ride; and the courts held that by so doing they assumed the extra hazard, and hence could not hold the railroad company liable for the effect of their own wrongful or careless conduct, nor recover for injuries sustained while so riding, unless it was also shown that they would have been injured if they had been riding in their proper places. The principle involved in the authorities cited by appellant can have no application here. In this case the plaintiff was riding on the train under the terms of a stock contract which contained no provision requiring him to ride in the caboose, nor any prohibition against his riding in the stock car. Under the terms of the contract it was the duty of the plaintiff to "feed, water, and attend the (horses) at his own expense and risk . . . while on board cars. . . ." Under the terms of the contract, therefore, it was clearly contemplated, and the intention of the parties, that the plaintiff should do whatever was reasonably necessary to attend his horses while on board cars. The duty to "feed, water, and attend" the horses was by the express terms of the contract placed upon him. This necessarily implied that he was to be given a reasonable opportunity to discharge this duty. And "it follows that if it was necessary, or if reasonable prudence required, that . . . [plaintiff go into and] remain in the car . . . [to] take care of . . . [his horses] as claimed by him, then he was rightfully there at the time of the accident." Kloppenburg v. Minneapolis, St. P. & S. Ste. M. R. Co. 123 Minn. 173, 143 N. W. 322. The question is, whether the plaintiff in going into, and remaining in, the stock car, and being there in the place and posi-

tion he was at the time of the accident, exercised the ordinary care and prudence natural to a prudent man, under all of the circumstances.

Unless the court could say from the conceded facts or undisputed evidence that ordinarily intelligent, reasonable, and fair-minded men would not and ought not to believe that plaintiff was acting as an ordinarily prudent person would have acted under the circumstances, then it was the duty of the court to submit this question to the jury. "The law can only define the duty of individuals under given circumstances. The existence of the circumstances is a question of fact for the jury." Dufour v. Central P. R. Co. 67 Cal. 319, 7 Pac. 769. "Where the circumstances are such that men of ordinary prudence and discretion might differ as to the character of the act under the circumstances of the case, the question is one of fact, and an appellate court should not be called upon to review the finding of a jury." Thurber v. Harlem Bridge, M. & F. R. Co. 60 N. Y. 331; Hays v. Miller, 70 N. Y. 112, 117.

The question of contributory negligence should always be submitted to the jury unless no recovery could be had upon any view that could properly be taken of the facts which the evidence tends to establish. "Where the evidence is such that different minds may reasonably draw different conclusions as to contributory negligence, the question is for the jury." 29 Cyc. 631. "If the facts are such that but one conclusion can reasonably be drawn from them, it is the province of the court to determine that conclusion. But if different minds may reasonably reach different conclusions from them, the parties are entitled to have the question determined by the jury." Whitsett v. Chicago, R. I. & P. R. Co. 67 Iowa, 150, 25 N. W. 104. When the evidence in regard to the contributory negligence is conflicting, or so uncertain that different minds might reasonably draw different conclusions, either as to the facts or the deductions to be drawn from the facts, then such question is properly submitted to the jury. See 29 Cyc. 631; Thomp. Neg. §§ 425, 427; Carr v. Minneapolis, St. P. & S. Ste. M. R. Co. 16 N. D. 217, 112 N. W. 972; Kunkel v. Minneapolis, St. P. & S. Ste. M. R. Co. 18 N. D. 367, 121 N. W. 830; Jackson v. Grand Forks, 24 N. D. 601, 45 L.R.A.(N.S.) 75, 140 N. W. 718; Rober v. Northern P. R. Co. 25 N. D. 394, 142 N. W. 22; Farmers' Mercantile Co. v. Northern P. R. Co. 27 N. D. 302, 146 N. W. 550. What is ordinary care and prudence

must necessarily depend upon all the circumstances of the transaction under consideration.

"In the ordinary transactions of life all men are required at times to assume some risks, and to confront dangers that are incident to their several vocations. What an active and experienced man may sometimes have occasion to do, and may do without being guilty of culpable negligence, another decrepit or inexperienced person might not do without being guilty of gross carelessness. The quality of every act should be judged by its environment. The fact that a man assumes a dangerous position, or incurs a risk, is not always conclusive evidence of negligence. Circumstances may have justified the assumption of the particular risk. A man is guilty of culpable negligence when he does or omits to do an act that an ordinarily prudent person in the same situation, and with equal experience, would not have done or omitted to do; or when he voluntarily exposes himself to a danger, which there was no occasion to incur in the proper discharge of his duties." Chicago, M. & St. P. R. Co. v. Carpenter, 5 C. C. A. 551, 554, 12 U. S. App. 392, 56 Fed. 451, 7 Am. Neg. Cas. 486. "In concluding by their general verdict that the appellee was not guilty of negligence contributing to his injury in riding in the stock car, instead of the caboose, the jury had the right to take into consideration, with the other facts and circumstances surrounding him at the time, the location of the car in the train, its distance from the caboose, and the duties required of the shipper by the shipping contract with reference to caring for the stock. He was not knowingly violating any rule of the carrier by riding in the stock car, and, taking the conduct of the employees in charge of the train in permitting him to ride there, together with the responsibility placed upon him by the contract itself as the shipper of the stock, and the particulars in which the carrier, by the contract, had released itself from liability, it cannot be said that appellee had no right to act upon the belief that he was riding in a proper place on the train while in the car with the stock." Lake Shore & M. S. R. Co. v. Teeters, — Ind. App. —, 74 N. E. 1014, 1021. See also 29 Cyc. 641; Hill v. Union Electric Light & P. Co. 260 Mo. 43, 169 S. W. 345, 356.

The plaintiff in the case at bar went into the car containing the horses, concededly for the purpose of doing that which it was his duty to do. The necessity of going into the car in the first instance is not in dispute.

The brakeman, one of the employees of the defendant in charge of the train, at the request of the conductor, accompanied the plaintiff into the car for the purpose of assisting in raising the horses. The conductor in charge of the train therefore had actual knowledge of the fact that plaintiff was in the car in question, and at the time the train started and at the time of the happening of the accident neither the plaintiff nor the brakeman had left the car. The evidence shows without dispute that when the train started the plaintiff had not had sufficient time to do what was necessary to do in order to properly attend his horses, and it was while in the discharge of that duty that he was injured by the sudden stopping of the train. The undisputed testimony shows that at the time of the accident he was standing in an upright position by the side of the car, near the door, while the brakeman was standing in the other door holding on to the door jamb. The brakeman saw and knew what plaintiff was doing. The conductor knew that he went into the car. The accident in question was, according to the undisputed testimony of all the witnesses, occasioned by the sudden stopping of the train owing to the breaking apart of the engines. Two such stops occurred, both due to the same cause. The second violent stop took place shortly after a similar occurrence. The accident was occasioned by the second stop. Both the engineer and conductor state that there was something the matter with the coupling, and the conductor gives, as his opinion for the breaking apart of the engines, the difference in the size of the drive wheels of the two engines. We are satisfied that, under the evidence in this case, it cannot be held as a matter of law that plaintiff was guilty of contributory negligence, but that this was a question of fact, and properly submitted to the jury. Kloppenburg v. Minneapolis, St. P. & S. Ste. M. R. Co. 123 Minn. 173, 143 N. W. 322; St. Louis & S. F. R. Co. v. Kerns, 41 Okla. 167, 136 Pac. 169; Evansville & T. H. R. Co. v. Mills, 37 Ind. App. 598, 77 N. E. 608; Lake Shore & M. S. R. Co. v. Teeters, — Ind. App. —, 74 N. E. 1014, 166 Ind. 335, 5 L.R.A.(N.S.) 425, 77 N. E. 599, 20 Am. Neg. Rep. 309; Pittsburgh, C. C. & St. L. R. Co. v. Brown, 178 Ind. 11, 97 N. E. 145, 98 N. E. 625; Southern R. Co. v. Roach, 38 Ind. App. 211, 78 N. E. 201; Missouri, K. & T. R. Co. v. Avis, 41 Tex. Civ. App. 72, 91 S. W. 877; Texas & P. R. Co. v. Adams, 32 Tex. Civ. App. 112, 72 S. W. 81; Pennsylvania R. Co. v. McCloskey, 23 Pa. 526, 12 Am. Neg. Cas. 548;

Lawson v. Chicago, St. P. M. & O. R. Co. 64 Wis. 447, 54 Am. Rep. 634, 24 N. W. 618; Florida, R. & Nav. Co. v. Webster, 25 Fla. 394, 5 So. 714; Illinois C. R. Co. v. Beebe, 174 Ill. 13, 43 L.R.A. 210, 66 Am. St. Rep. 253, 50 N. E. 1019; Harvey v. Deep River Logging Co. 49 Or. 583, 12 L.R.A.(N.S.) 131, 90 Pac. 501; Lake Shore & M. S. R. Co. v. Brown, 123 Ill. 162, 5 Am. St. Rep. 510, 14 N. E. 197; Chicago, M. & St. P. R. Co. v. Carpenter, 5 C. C. A. 551, 12 U. S. App. 392, 56 Fed. 451, 7 Am. Neg. Cas. 456; Chicago, R. I. & P. R. Co. v. Lee, 34 C. C. A. 365, 92 Fed. 318; Feldschneider v. Chicago, M. & St. P. R. Co. 122 Wis. 423, 99 N. W. 1034, 16 Am. Neg. Rep. 630.

The plaintiff was rightfully upon the train under a personal contract with the defendant. He was not a trespasser, a mere licensee, or a free passenger; but a passenger for hire, and entitled to protection as such. 6 Cyc. 545; Lake Shore & M. S. R. Co. v. Teeters, — Ind. App. —, 74 N. E. 1014, 1018; Kloppenburg v. Minneapolis, St. P. & S. Ste. M. R. Co. 123 Minn. 173, 143 N. W. 322; Evansville & T. H. R. Co. v. Mills, 37 Ind. App. 598, 77 N. E. 608. And while it is true that plaintiff, by traveling on a freight train will be deemed to have assumed the inconvenience and discomfort, as well as all risks reasonably incident to the operation of that kind of a train, still he was and continued to be a passenger, and the obligation on the part of the railway company to exercise great care for his safety remained in full effect. The plaintiff assumed those risks, and those risks only, reasonably incident to the mode of transportation utilized, but not those risks and dangers produced by unnecessary and unusual occurrences not incident to the proper handling of a freight train. In Chicago, R. I. & P. R. Co. v. Lee, 34 C. C. A. 365, 368, 92 Fed. 318, the court said: "The agreement of carriage is nothing, after all, but a contract, and a railroad company may lawfully stipulate to carry a passenger in a baggage car, in an express car, a stock car, or on a freight train generally. If it makes such a contract, it is required to exercise ordinary care in the performance of it." Cyc. states the law on this subject as follows: "In the operation of freight trains, however, somewhat greater peril is involved to passengers riding thereon than is involved in the operation of passenger trains. Nevertheless, the rule of liability, that is, the requirement as to the exercise of a high degree of care and foresight, is the same. The passenger by assuming to ride by this means of conveyance does not relieve the

carrier from the obligation to exercise great care for his safety. And a passenger properly allowed to ride in a place of danger is entitled to that degree of care which corresponds to the danger to which he is exposed." 6 Cyc. 594. And the supreme court of Minnesota in the case of Kloppenburg v. Minneapolis, St. P. & S. Ste. M. R. Co. 123 Minn. 173, 143 N. W. 322, said: "While in the car he must be deemed to have assumed all risks reasonably incident to such carriage, but not those resulting from unnecessary and extraordinary occurrences involving dangers not incident to the proper handling of that kind of train."

It is next asserted that the court committed two errors in its instructions to the jury: (1) By failing to define "proximate cause;" (2) by instructing the jury as follows: "But the burden of proof is upon the defendant to prove by a fair preponderance of all the evidence that the plaintiff was guilty of contributory negligence." The remainder of the instructions are not challenged.

The court's instructions to the jury were in writing. Defendant made no request for an additional instruction defining the term "proximate cause." The court in its instructions outlined the issues of facts to be determined by the jury, and concededly gave correct definitions of "negligence" and "contributory negligence," and clearly informed the jury what it must find in order to entitle plaintiff to a recovery, as well as what constituted such contributory negligence as would bar his right of recovery. The court's instructions upon these features of the case are not questioned, but are conceded to be correct. There was no dispute or conflict in the evidence as to the cause of the accident. The testimony all showed that it was caused by the sudden or violent stopping of the train; and that this in turn was occasioned by the breaking apart of the engines. Did this occur through the negligence of the defendant? Was plaintiff guilty of contributory negligence? Did plaintiff suffer any injury? If so, were the injuries caused by the negligence of defendant? And, if plaintiff is free from contributory negligence, what amount of money will compensate plaintiff for the injuries he received, if any? These questions were fully submitted to the jury under appropriate instructions. It is difficult to see how, under the evidence in this case, any prejudice could result from the omission to define "proximate cause" in the charge to the jury. No error was committed by such omission, in

absence of a request for such instruction.   Miller v. Boone County, 95 Iowa, 5, 63 N. W. 352; Burk v. Creamery Package Mfg. Co. 126 Iowa, 730, 106 Am. St. Rep. 377, 102 N. W. 793, 18 Am. Neg. Rep. 62; Louisville v. Hart, 143 Ky. 171, 35 L.R.A.(N.S.) 207, 136 S. W. 212; See also 11 Enc. Pl. & Pr. 217; Thomp. Trials, 2d ed. § 2341; 29 Cyc. 651.

Nor do we find any merit in the second objection to the instructions. Appellant's objection to this instruction is stated in its brief as follows: "The instruction standing alone without explanation is not good law. No explanation of the limitation or application of the rule was attempted.   Hence the jury must have understood that, before the defendant could recover, the defendant must prove by a fair preponderance of the evidence that the plaintiff was guilty of contributory negligence, no matter whether or not plaintiff had established that the defendant was guilty of any specific act of negligence proximately causing plaintiff's alleged injuries, and without reference to whether or not the testimony of the plaintiff disclosed contributory negligence."   No authority is cited, and no further argument presented in support of this assignment of error.   The instrument complained of is not even a complete paragraph of the charge.   The entire paragraph reads as follows: "The burden of proof is upon the plaintiff to prove by a fair preponderance of all the evidence, the allegations of his complaint, that is, by the greater weight of all the evidence in the case; but the burden of proof is upon the defendant to prove by a fair preponderance *of all the evidence* that the plaintiff was guilty of contributory negligence." Immediately following the foregoing, the court further instructed the jury: "The plaintiff claims that his injuries were sustained by reason of the negligence of the defendant.   It is for the jury to decide from all the evidence in the case whether the defendant was negligent at the time of the injury, and whether the negligence of the defendant was the proximate cause of the injury."   The court thereupon defined the term "negligence," and after defining such term instructed the jury as follows:   "The defendant in this case claims that the plaintiff at the time of the injury was guilty of contributory negligence, and that such contributory negligence was the proximate cause of his injury.   Should the jury find that he was guilty of contributory negligence, then you should find for the defendant for a dismissal of this action."   The

court then carefully defined "contributory negligence," and prescribed the rules to be applied by the jury in determining whether the plaintiff in this case was guilty of contributory negligence; and then further instructed the jury as follows: "And if plaintiff's act at the time of the injury was contributory negligence when measured by these rules, then you should find for the defendant."

No rule is better settled than that the court's instructions must be considered as a whole. "The charge is entitled to a *reasonable interpretation.* It is *construed as a whole,* in the same connected way in which it was given, upon the presumption that the jury did not overlook any portion, but gave due weight to it as a whole; and this is so, although it consists of clauses originating with different counsel and applicable to different phases of the evidence. If, when so construed, it presents the law fairly and correctly to the jury, in a manner not calculated to mislead them, it will afford no ground for reversing the judgment, although some of its expressions, if standing alone, might be regarded as erroneous; or because there may be an apparent conflict between isolated sentences; or because its parts may be in some respects slightly repugnant to each other, or because some one of them taken abstractly, may have been erroneous." Thomp. Trials, § 2407. See also 38 Cyc. 1778; Gagnier v. Fargo, 12 N. D. 219, 96 N. W. 841; Wyldes v. Patterson, ante, —, 153 N. W. 630.

The charge, construed as a whole, seems to fairly submit the issues in the case to the jury. The objection urged that the instruction complained of in effect made it incumbent upon the plaintiff to disprove plaintiff's case, and eliminated plaintiff's testimony from the jury's consideration in determination of the question of contributory negligence, is wholly without merit. The court expressly stated that the defendant was required to prove contributory negligence only "by a fair preponderance *of all the evidence.*" Can it be said that this limited the jury to a consideration of defendant's evidence only? This contention is untenable. The jury's attention was directed to all the evidence. In the case of Evansville & T. H. R. Co. v. Mills, 37 Ind. App. 598, 77 N. E. 608, 612, where an instruction relative to the same matter was under consideration, and where the court failed to instruct the jury in so many words that "*all* the evidence" must be considered, the court in disposing of the same contention which is made by appellant in this case, said: "It

would be imputing dense ignorance to the jurors to say that they must have understood that by the expressions, 'from a preponderance of the evidence,' and 'from the evidence in the case,' the court meant less than all the evidence upon the subject of contributory negligence, regardless of its source." See also Missouri K. & T. R. Co. v. Milam, 20 Tex. Civ. App. 688, 50 S. W. 417; and Mobile, J. & K. C. R. Co. v. Bromberg, 141 Ala. 258, 37 So. 396, 402.

Even though the instruction complained of was not entirely perfect, this would not necessarily constitute reversible error, unless it further appears that the jury were misled thereby. For "courts of error do not sit to decide moot questions, but to redress real grievances. It is therefore a rule of nearly all the courts, that no judgment will be reversed on account of the giving of erroneous instructions, unless it appear probable that the jury were misled by them." Thomp. Trials, § 2401. The defendant made no request for any further or additional instruction, and it is difficult to see how at this time it can be heard to say that the court should have further explained or qualified the instruction in question. Where an instruction is correct as far as it goes, error cannot be assigned on the ground that it was not sufficiently full or explicit, unless request is made for more specific and comprehensive instruction. 11 Enc. Pl. & Pr. 217; Thomp. Trials, 2d ed. §§ 2341, 2396; 38 Cyc. 1693; Nokken v. Avery Mfg. Co. 11 N. D. 399, 92 N. W. 487; Carr v. Minneapolis, St. P. & S. Ste. M. R. Co. 16 N. D. 217, 112 N. W. 972; Landis v. Fyles, 18 N. D. 590, 120 N. W. 566; State ex rel. Pepple v. Banik, 21 N. D. 417, 131 N. W. 262; Zilke v. Johnson, 22 N. D. 75, 132 N. W. 640, Ann. Cas. 1913E, 1005.

Defendant also insists that a new trial should have been granted on the ground of newly discovered evidence. Upon the trial a brother of the defendant testified that he was present and saw the accident and assisted in raising the horse which fell on plaintiff. The presence of this brother upon this train was denied by the conductor and brakeman, who testified for the defendant. The testimony of both the brakeman and the plaintiff showed that an emigrant was present at the time of the accident, and assisted in raising the horses which had fallen down in plaintiff's car at the first stop. The proposed new testimony is that of the various conductors who handled the train on which plaintiff was riding between St. Cloud, Minnesota, and Minot, North Dakota, their

proposed testimony being to the effect that each conductor was required to make a report of all persons riding on their train, and, that, with the exception of a short distance between Minnesota transfer and Barnesville, Minnesota, no person rode upon such train except persons holding stock contracts.

The proposed testimony of Ole Anderson, in certain particulars, contradicts the testimony of the plaintiff, but in other particulars it also squarely contradicts the testimony of the brakeman. Anderson's proposed testimony is further to the effect that he does not remember seeing any other person in the car at the time of the accident except the plaintiff and the brakeman; and "that his best recollection is that only the plaintiff, the brakeman, and he [Anderson] were the only persons who assisted in raising the horses. It will be observed that the purpose of the proposed newly discovered evidence is largely to impeach the testimony of D. F. McGregor by showing that he was not on the train at the time of the accident. The witness McGregor, however, did not testify that he rode in the caboose, but on the contrary his testimony was rather to the effect that he rode in the car in which the horses were contained. And the brakeman testified that there was ample hiding room in which a man could have been concealed in the car.

Under the laws of this state a new trial may be granted for "newly discovered evidence material to the party making the application, which he could not with reasonable diligence have discovered and produced at the trial." Compiled Laws, §§ 7660, 1913. The exercise of reasonable diligence, therefore, is an express requirement of the statute.

The only showing of diligence is the affidavit of one of the attorneys for the defendant, to the effect that he has been such attorney ever since the commencement of the action. "That the claim department of the defendant under the direction of this affiant made a thorough investigation of the facts and circumstances surrounding the alleged injury of plaintiff at the time, place, and manner set out in the complaint, and made a report in writing to this affiant, and took statements in writing from all persons that could be found at the time of such investigation, who knew anything about the facts or circumstances relating to the alleged injury of the plaintiff, and such written statements were delivered to affiant before the trial of the above-entitled action. . . . That said report and none of said written statements so taken in the investigation

of said case disclosed the name of the person present (being an emigrant) with the plaintiff in the car at the time of the alleged injury nor his whereabouts, although said report did disclose that such a person was present, and that under affiant's direction said claim department of the defendant made diligent efforts to ascertain the name and whereabouts of said emigrant so present at the time of said accident, and made inquiries of various parties likely to know, but up to the time of trial was wholly unable to ascertain the name of said emigrant or his whereabouts. That the defendant, for the first time upon the trial of his action, learned, through the testimony of the plaintiff herein, that the name of said emigrant, so present as aforesaid, was Ole Anderson, and subsequent to the trial herein located him in the state of North Dakota." The affidavit further states that the report and written statements did not disclose that D. McGregor was present at the accident or upon the train. The affidavit of Ole Anderson tendered in support of the motion for new trial shows that he is a resident of Mayville, North Dakota, having lived there for twenty-eight years, and is engaged in the business of buying, selling and shipping horses, and has been so engaged for a number of years. That he shipped a carload of horses from Mayville to Williston, North Dakota, and was in charge of such shipment at the time of the accident. The testimony of the conductor in charge of the train at the time of the accident shows that there were only five or six persons riding on the train at the time of the accident. The affidavits of the conductor and the auditor tendered in support of the motion for new trial show that all such persons were riding on stock contracts. The stock contract of the defendant in evidence in this case shows that such agreement contains the name of the shipper, a description of the shipment, station where shipped, and the place of destination, and is signed by the shipper. This action was commenced June 2, 1913, and was not tried until December 3, 1913. Hence, the defendant had a period of six months in which to obtain the necessary witnesses, and during all of this time it must have had in its possession the stock contract containing the name and address and signature of Ole Anderson, the witness in question.

What person made the thorough investigation for the claim department? What did he do in making his investigation? Why did he fail to locate Ole Anderson? These questions are not answered or explained.

The mere assertion of diligence contained in the affidavit of defendant's attorney is at the best a mere conclusion. It is not contended that the attorney had any personal knowledge of what was done.

"The affidavit presented to show the requisite diligence where a new trial is sought on the ground of newly discovered evidence must possess a greater degree of certainty than a pleading. It should negative every circumstance from which negligence can be inferred. *General assertions of diligence are viewed as mere opinions or conclusions of law.*

"The acts which were performed and which are supposed to constitute the diligence required by law should be specifically stated in order that the court may determine what diligence was used." Spelling, New Tr. & App. Pr. § 218.

The trial court filed a memorandum opinion with the order denying a new trial, wherein he says: "I am satisfied that the showing herein made is insufficient to warrant the granting of a new trial: 1st. For the reason that the evidence which defendant claims is newly discovered evidence would only be cumulative so far as Anderson is concerned, and the evidence as shown by the other affidavits would only be in the nature of impeaching testimony; 2d. There does not seem to me to be any probability of a different result in the event a new trial was granted than has already been reached in the former trial. There does not seem either to have been any very diligent search made for the witness Anderson, and there is a serious question whether or not sufficient diligence has been used or shown."

It is elementary that a motion for a new trial on the ground of newly discovered evidence is addressed largely to the sound judicial discretion of the trial court, and that the appellate court will not interfere unless it is shown that such discretion has been abused. The law applicable to motions for a new trial on discretionary grounds, both in the trial and appellate courts, was fully discussed by this court in two recent divisions. See Aylmer v. Adams, 30 N. D. 514, 153 N. W. 419; State v. Cray, ante, 67, 153 N. W. 425.

"The determination of this [diligence], as well as every other question relative to this ground for new trial, is addressed to the discretion of the trial court, whose duty it is to take into consideration the particular circumstances of each case, with all its distinct and varying phases and bearings, for the purpose of ascertaining what is and

what is not diligence within the contemplation of the statute; and its conclusion upon the point is so peculiarly and exclusively an exercise of discretion, that the appellate court will never be justified in interfering therewith unless the record discloses a clear abuse of discretion." 1 Hayne, New Tr. & App. § 92, p. 433.

"It is to be remembered that a wide discretion is vested in the trial court in determining the weight to be given to the statements contained in affidavits upon motion for new trial. This discretion is to be exercised in determining the diligence shown, the truth of the matters stated, and the materiality and probability of the effect of them, if believed to be true." People v. Weber, 149 Cal. 325, 86 Pac. 671; Scanlon v. San Francisco & St. J. R. Co. 128 Cal. 586, 61 Pac. 271, and Hayne, New Tr. & App. §§ 87, 89.

"Not only must the newly discovered evidence be of such a character, and so presented, as to render it probable that a different result will or ought to follow a retrial, but the question itself as to whether the evidence is of such a character, and whether a different result is probable or ought to follow, is one addressed to the discretion of the trial court, and the exercise of that discretion will not be disturbed except in case of a manifest abuse." 1 Hayne, New Tr. & App. § 91, p. 431.

In State v. Cray, supra, this court said: "The question of whether or not a new trial ought to be granted was primarily a question for the trial court. The function of this court on this appeal is merely to review the ruling of the trial court on this motion, and this review is limited to a determination of the question of whether, in denying a new trial, the trial court abused its discretion, and thereby effected an injustice. The discretion vested in the trial court should always be exercised in the interest of justice. The presumption is that it was properly exercised. Even if all the newly discovered evidence had been offered and received at the trial, there would still be ample evidence to sustain the verdict. The trial court, after considering the newly discovered evidence, and weighing the same with the evidence adduced upon the trial, was still of the opinion that substantial justice had been accomplished at the former trial. There is nothing to justify this court in saying that the trial court erred in its conclusion, or abused its discretion in so holding."

This language is equally applicable to the case at bar. The judgment and order appealed from must be affirmed. It is so ordered.