FARMERS' NATIONAL BANK of Brookings, S. Dak., a corporation, Respondent, v. L. and M. TUDOR, individually and as co-partners under the firm name of L. Tudor & Son, Appellants.

(183 N. W. 845.)

**Sales — instruction limiting express warranty in sale of cattle to statement that they were free from tuberculosis held erroneous.**

1. Defendants purchased certain registered cows and calves from one Walters for $6,675.00, paying $2,000.00 cash at the time of purchase, and giving their negotiable promissory note for the balance, secured by a chattel mortgage on the stock. After maturity Walters sold the note to the plaintiff. Default having occurred in the terms of the mortgage, plaintiff brought action to foreclose. The answer admitted all the equities, such as the giving of the note and mortgage and failure to pay the note after its maturity, but interposed the legal defense of breach of warranty, alleging damage in a given amount. Defendants allege that the warranty was to the effect, that Walters, at the time of the sale, represented, stated and warranted that the cattle were in good condition, in perfect health and free from disease, and were in every way all right. It was further alleged that, at the time of the sale, the stock so purchased were infected with tuberculosis. The facts, with reference to the warranty and its breach, and the damages, if any, suffered by defendants thereby, were submitted to a jury. It returned a verdict for plaintiff.

The court, in substance, instructed the jury, that, in order to determine whether there was an express warranty, it must be shown that there was an express, direct affirmation by Walters at or before the time of sale, that the cattle sold were free from the disease of tuberculosis;

It is *held*, for reasons stated in the opinion, that the giving of this instruction, which is fully set out in the opinion, was prejudicial to defendants and was reversible error.

**Appeal and error — dismissal of appeal denied.**

2. For reasons stated in the opinion, the plaintiff's motion in this court, to dismiss the appeal, is denied.

Opinion filed June 8, 1921.

Appeal from a judgment of the District Court of Cass County; *Englert, J.*

*Pollock & Pollock* and *L. L. Twitchell,* for appellants.

*Engerud, Divet, Holt & Frame,* on the brief.

The court erred in refusing to permit the defendants to show by expert testimony that the cattle were afflicted with tuberculosis at the date of their purchase and in restricting the use of Exhibits H and I. State v. McKone, 31 N. D. 547; Bixby v. Omaha Ry. Co. 75 N. W. 182 (Ia.) and cases cited therein.

An expert is not confined to his own examination or observation in expressing an opinion of an expert nature. State v. Reilly, 25 N. D. 355; State v. Moeller, 24 N. D. 168; State v. Moeller, 20 N. D. 122; Edington v. Aetna Life Ins. Co., 77 N. Y. 564; Eckles & Brown v. Bates, 26 Ala. 655; Lush v. McDonald, 57 Am. Dec. 566.

A party will not be permitted to pick out parts of a document favorable to himself and exclude that which is unfavorable relating to the same subject. Guild v. Moore, 32 N. D. 458; 1 Jones Commentaries on Evidence, (1913 ed.), 171 and 294.

The reason for this rule is most cogently stated in Ah Doon v. Smith, 34 Pac. 1093. The record shows that the defendants stated that they wanted a nice clean herd and asked him if they were a clean, healthy herd and his reply was that they were "all right."

This statement by Walters was a warranty of quality, that the cattle were "sound." Smith v. Justice, 13 Wis. 600; McClintock v. Eurick, 7 S. W. 903 (Ky.) ; Kemp v. Mays, 127 N. E. 156 (Ind.) ; Van Hoesen v. Cameron, 20 N. W. 609; Kenner v. Harding, 28 Am. Rep. 615; 35 Cyc. "Sales" 422.

*Lawrence, Murphy & Nilles,* for respondent.

"Copies of instruments or records must be properly authenticated in order that they may be admitted in evidence. It is a familiar rule that a copy must be authenticated in a mode provided by the statute, and the statute must in this respect be strictly pursued." 10 R. C. L. 1104; Reynolds v. Rowly, 38 Am. Dec. 233; State v. Kniffen, 44 Wash. 485; 87 Pac. 837.

"In the case of records or copy of transcript must be certified by the official custodian of the records." 10 R. C. L. 1104; Anderson v. Blair, 48 S. E. 951; Weeks v. Lumber Co., 133 Ga. 472; 66 S. E. 168; Thompson v. Gallard, 45 Am. Dec. 778.

"It would seem that a copy of a public record required by law to be kept is admissible when certified by the custodian without being sworn to and without the testimony of witnesses that they have compared it with the original and found it to be a true copy." 10 R. C. L. 1104; Kellogg v. Finn, 22 S. D. 578, 119 N. W. 545.

"It is the rule that copies of certified or examined copies are clearly not admissible unless the original and first copy is lost or inexcessable and it is necessary to produce secondary evidence." State v. Kohn, 108 Ia. 208; 78 N. W. 857; Goodrich v. Weston, 102 Mass. 362; 3 Am. Rep. 469.

An appellate court cannot say that rulings of the trial court sustaining objections to questions asked a witness were erroneous or prejudicial when no offer of proof was made. State v. Schoenberg, 24 N. D. 532; 140 N. W. 105; Railway Co. v. Lebeck, 32 N. D. 162; 155 N. W. 648.

"The offer of proof was inadmissible under the well settled rule that questions cannot be asked expert witnesses in such a way as to cover the very question to be found by the jury." Collins v. Ishman, 180 Ill. Apps. 655; People v. Lehr, 196 Ill. 361, 63 N. E. 725.

"It is improper to allow an expert to give his opinion on the ultimate fact to be determined by the jury." Read v. Land & Cattle Co., 66 Nebr. 423, 92 N. W. 622; Railway Co. v. Holmes, 68 Nebr. 826, 94 N. W. 1007; Railway Co. v. Sugar, 117 Ill. Apps. 578; Bettz v. Bettz, 113 Ia. 111, 84 N. W. 975; Marshall v. Hanvey, 115 Ill. 318, 88 N. W. 801; Leslie v. Granite Co., 172 Mass. 468; 52 N. W. 542.

GRACE, J. This appeal is from a judgment in plaintiff's favor for $5,832. A statement of the material facts will lead to a clear understanding of the issues.

On November 8, 1917, the defendants purchased from W. H. Walters, at Pipestone, Minn., 31 registered cows and 24 registered calves. The agreed purchase price was $6,675. Of this amount the defendants paid $2,000 in cash at the time of the purchase, and after the cattle were shipped to North Dakota the defendants gave their note for $4,675, which was secured by a chattel mortgage on the above stock. The original number agreed to be purchased was 56 head, 32 cows, and 24 calves for $7,000, but before the sale was completed one cow died, and whole purchase price was reduced to $6,675.

Default was made in the terms and conditions of the mortgage, by

reason of the note and interest thereon not having been paid at maturity. The payee named in the note sold, assigned, indorsed, transferred, and delivered the note to the plaintiff, after the maturity of it.

It is admitted that plaintiff is the owner and holder of the note, and that, in its hands, it is subject to all the equities and defenses as if the litigation were between the original parties.

The defendants in their answer admit the execution and delivery of the note and mortgage, and made other admissions in their answer, not material here to notice, and, in addition thereto, interposed a general denial.

Defendants, further answering interposed a defense of breach of warranty. It is as follows:

"For a further answer to said complaint and as and for a defense to said action and as and for an offset and counterclaim, the defendants allege:

"That immediately prior to and on the 8th day of November, 1917, the date upon which the said note was made and delivered, the defendants were seeking to purchase a herd of pure-bred registered cattle, with the intent, object, and purpose of establishing a stock breeding and stock sales herd of pure-bred registered cattle near the village of Hunter, in the county of Cass and state of North Dakota.

"That W. H. Walters, the original payee named in said note, then had and exhibited to the defendants at Pipestone, Minn., the said cattle mentioned and described in paragraph 4 of said complaint, with a view and object of selling them to the defendants for use in establishing and conducting such breeding and stock sales herd, said W. H. Walters having been informed and then well knowing the intent, object, and purpose of the defendants as hereinbefore alleged, and said W. H. Walters, in order to sell to defendants said cattle and with the intent and purpose of procuring and inducing them to purchase the same from him, represented, stated, and warranted that the said cattle were in good condition and in perfect health, and were free from disease, and were in every way all right, and that they were in all respects suitable for the establishment and conducting of such a herd and for the purpose of breeding pure-bred Aberdeen Angus registered cattle and selling the same to persons desiring to purchase cattle of such character and description for breeding and sales purposes.

"That the defendants, believing and relying upon such representations, statements, and warranty of the said W. H. Walters, and being induced

thereby, and not otherwise, purchased from him the said cattle at and for an agreed price of $6,675, and as a condition and as a part of said purchase contract and agreement the said W. H. Walters agreed to deliver to the said defendants all of the said cattle at the said Hunter, Cass county, N. D., the defendants agreeing to pay upon delivery, as aforesaid, for said cattle the sum of $2,000 in cash and the making and delivery of a promissory note and chattel mortgage of the kind and character severally described in the plaintiff's complaint herein.

"That soon thereafter the said W. H. Walters did deliver to the defendants the said cattle, and the defendants in consideration thereof paid to him the said sum of $2,000, and made, executed, and delivered to him a note and chattel mortgage of the general character and description of those mentioned and described in the complaint in this action.

"That in truth and in fact the said cattle, on and immediately prior to the said 8th day of November, 1917, and thereafter, were not as represented, stated, and warranted by the said W. H. Walters to these defendants, as hereinbefore alleged, and were not in good condition and in perfect health, and were not free from disease, and were not all right, but in truth and in fact were in bad condition and in imperfect health, and were diseased, and a large proportion of them were then and subsequently afflicted with and affected by and had tuberculosis, and were not suitable for the establishment and conducting of a stock breeding and stock sales herd, and were not suitable and could not be used for breeding pure-bred Aberdeen Angus registered cattle and selling the same to persons desiring to purchase cattle of such character and description for breeding and sales purposes.

"That because of the misrepresentations, misstatements, and failure of warranty as to the condition of said cattle and of the health thereof, and because of the fact that said cattle were absolutely unfit and useless for the purpose for which they were purchased, as hereinbefore alleged, the defendants have been and were greatly damaged, and suffered great loss, in that they were compelled to and did pay freight from Pipestone, Minn., to Hunter, N. D., amounting to $45 upon those of such animals purchased, subsequently found to be tubercular, and did feed and care for animals last mentioned, from the time of purchase thereof until quarantined and condemned and slaughtered, at an expense to defendants of $2,260, and did segregate and quarantine all of said cattle for the purpose of ascertaining and determining the condition of each of the in-

dividual members of said herd and to determine and eliminate from said herd such of the individual members thereof as were afflicted with tuberculosis, all of which they were required and compelled by the federal government and state authorities of the state of North Dakota, to do, all at great sacrifice and expense in money and outlay in testing, caring for, feeding, and treating the said cattle; that in so doing it was ascertained that at least 21 head of said cattle were incurably afflicted with tuberculosis, and none of the same could be saved or used for the purpose for which they were purchased, as hereinbefore alleged, but could only be disposed of as tubercular cattle for killing purposes or condemned, and these defendants were compelled to and did dispose of and sell 21 head of said cattle at great sacrifice, either for killing purposes as tubercular infected cattle or as condemned cattle, for the latter realizing only the value of the hides.

"That shortly subsequent to the purchase and delivery to them of these cattle the defendant purchased a registered Aberdeen Angus bull, as a herd bull to be used in breeding the cattle so purchased from said Walters. That the said herd bull contracted and became infected with tuberculosis from the said tubercular cattle purchased from said Walters, and these defendants were by the state veterinarian of North Dakota required to quarantine said bull, and to subsequently have him slaughtered as tubercular, to the great damage of defendants."

Defendants further, in substance, allege, that if the cattle had been as represented and warranted, they would have been reasonably and fairly worth for the purposes for which they were used the sum for which they were purchased. That, in truth and in fact, for the purposes for which they were purchased, the herd had no value whatever, and was a liability and damage to any person who procured the same, and that for any purpose they were not worth to exceed the sum of $2,000.

To the answer, the plaintiff interposed a reply, consisting of a general denial.

Before the cattle were shipped from Pipestone to Hunter, Walters had the cows tested to determine if any of them were tubercular. This test was made by Dr. Sigmond, and was completed on November 6, 1917. The 24 calves were not given the test. Walters told the defendant that the calves were under 6 months of age, and would not be tested. Under the state and federal regulations, it is claimed, a calf under 6 months of age does not respond to such tests.

At the time of the sale, 6 of the calves were at least from one to five weeks over 6 months of age. Dr. Sigmond's report shows that he found no evidence of tuberculosis. Defendants then shipped the cattle from Pipestone to Hunter, and they were taken by them to their farm, and, as the evidence shows, received good care. They were placed in a sanitary barn, with good light and ventilation, and had plenty of feed and running water, and were properly cared for until tested for tuberculosis by Dr. Taylor, a veterinarian. This test was made on the 21st and 22d day of May, 1918, about 6½ months after they were brought to defendants' farm. The test showed that 9 of the cows and five of the calves were infected with tuberculosis. These were quarantined; shipment out of the state not at that time being permitted by the federal government. At this same time Dr. Taylor tested all of the cattle on the farm, which were over 6 months old, which were about 60 head, among which were 11 grade cows and one herd bull, named Blackwood of Page. The grade cows and this bull successfully passed the test.

At the time of this test all that were tubercular were found to be from Walters' herd. Those that were thus found to be tubercular were quarantined until disposed of about August 1, 1918, when 12 of them were shipped to South St. Paul. Two of the cows that were heavy with calf were shipped later in November, 1918. Those shipped in August, 1918, were slaughtered, under the authority of the United States Bureau of Animal Industry.

In the first part of November, 1918, another shipment of 8 head of the cattle purchased by defendants from Walters was made to South St. Paul. With them was also shipped Blackwood of Page, all of which were at that time infected with tuberculosis. They were slaughtered under the same authority as the 12 head above mentioned.

For the United States Bureau of Animal Industry at South St. Paul, Dr. Anderson is the chief inspector, and, as such, a report of the post-mortem of the above stock that was slaughtered on each of the above occasions, and the condition of each animal, as disclosed by the post mortem, was prepared and delivered to Dr. Anderson. He filed the original of the report at the home office in the Bureau of Animal Industry at Washington, D. C. He had copies made of it, one of which he retained at his office in South St. Paul, and the other he mailed to the Live Stock Sanitary Board of the state of North Dakota, of which Dr. Crewe, a veterinarian, is secretary.

Exhibits H and I are copies of the respective post mortem examinations of the cattle above referred to. The copies are not certified to by Dr. Anderson, or any other person. They were received by Dr. Crewe through the mail, from Dr. Anderson, the federal inspector of South St. Paul.

On August 2 and 3, 1918, the herd bull, Blackwood of Page, was again tested by Dr. Thompson and found to be tubercular and quarantined. It is claimed he was tested before being purchased by the defendants, and was found then to be healthy, but the evidence in this regard is somewhat conflicting.

On August 16 and 17, 1918, the defendants' herd was examined by Dr. Thompson, a federal inspector in North Dakota, under the directions of Dr. Crewe, when 6 more head of the Walters herd were found to be tubercular, and quarantined. Fourteen head had been found tubercular, as above stated, by Dr. Taylor. It appears later 1 more of the cows of this herd was tested and reacted. On December 4 and 5, 1918, Dr. Taylor made another test of the herd, and found that none reacted.

Other cattle which were on the Walters farm, or which remained after defendants had purchased the herd, which in number were 25 purebred bulls and 3 grade cows, were, shortly after that time, tested by Dr. Sigmond, and were not by him quarantined; and in July, 1918, the same cattle, with the exception of two bulls, were tested by Dr. Miller of Elkin, S. D. Walters had shipped the cattle to Aurora, S. D., to be put in quarantine and to be tested there by A. C. Miller, of Elkin, S. D., a veterinarian. They were tested by him, with the exception of two bulls, and released from quarantine.

The defendants have made five assignments of error, in substance as follows:

The numbers given to the assignments of error in the appellants' brief do not correspond with the numbers of the error in the specifications of error. Appellants in their brief have set forth only the substance of the errors contained in the specifications of error of which they complain. We will adopt the arrangement of them as contained in the brief.

(1) The court erred in refusing to permit the defendants to show by expert testimony that the cattle were afflicted with tuberculosis at the date of their purchase, and in restricting the use of Exhibits H and I.

(2) The court erred in excluding from the evidence a part of Exhibit 4.

(3) The court erred in instructing the jury that the defendants alleged and set forth in their answer that a large proportion of them (the cattle) were subsequently afflicted with and had tuberculosis, and by omitting in such connection the allegation of the defendants' answer that the herd in question was afflicted with tuberculosis *at the time* the same was purchased.

(4) The court erred in charging the jury as follows: In order to determine whether there was an express warranty, it must be shown that there was an express, direct affirmation that the cattle sold were free from the disease of tuberculosis.

(5) The court erred in making and volunteering the remarks, comments, statements, and questions set forth in detail in the specifications of error, and thereby prevented the defendants from having a fair and impartial trial.

Since as we are convinced that the fourth assignment of error is well taken, and that the giving of that instruction constitutes prejudicial and reversible error, it will be unnecessary to consider any of the other assignments of error.

In order to afford a clear understanding of this error, the instruction in full in this regard will be set forth. It is as follows:

"To constitute an express warranty, the term 'warranty' need not be used; no technical set of words are required, and it may be inferred from the affirmation of a fact which induces the purchase on which the buyer relies and on which the seller intended that he should so do, but, of course, the words used must be tantamount to a warranty, and not dubious or equivocal.

"In order to determine whether there was an express warranty, it must be shown that there was an express, direct affirmation that the cattle sold were free from the disease of tuberculosis—the mere expression of an opinion does not constitute a warranty—and in determining whether a statement of the seller is to be deemed a warranty, it is important to consider whether in the statement a seller assumes to assert a fact on which the buyer is ignorant, or merely states an opinion or judgment on a matter on which the seller has no special knowledge, and on which the buyer may be expected also to have an opinion and to exercise his judgment.

"As to whether Mr. Walters, the seller of the cattle, knew that the cattle were diseased or not, makes no difference, and would not relieve

him from liability if you find from the evidence that he actually warranted the cattle, or that his language amounted to a warranty, to be free from the disease of tuberculosis.

"The decisive test is whether, Mr. Walters stated that the cattle were free from the disease of tuberculosis at the time that the sale was made, and that the same was made in connection with the making of the sale, and that the defendants acted thereon, or that he used such language or words which would leave such an impression in the minds of the defendants.

"As I have already told you, if you find from the evidence that Mr. Walters made such a representation, and that it was clear and positive, and not a mere expression of opinion, and the defendants understood it ·was a warranty, and, relying on it, purchased the cattle, then your next question would be to determine whether there was a breach of such warranty.

"I should tell you, here, however, that, should you find from the evidence in this case that no representations were made by Mr. Walters in this case amounting to an express warranty that the cattle were free from the disease complained of in this suit, then it would be your duty to return a verdict in favor of the plaintiff for the amount asked for in the complaint, and you would not need to proceed further with your inquiries.

"Should you, however, find that the representations were made by Mr. Walters in connection with the sale of the cattle to the defendants which amounted to a warranty, warranting the cattle to be free from the disease complained of, then your next inquiry should be directly towards determining whether there was a breach of said warranty. It would then be for you to determine from the ·evidence in this case as to whether or not the cattle were in fact infected or afflicted with the disease of tuberculosis at the time the same were sold by Mr. Walters to the defendants. In this connection, I instruct you that it is incumbent upon the defendant to show by a fair preponderance of the evidence that the cattle purchased by the defendants from W. H. Walters, at Pipestone, Minn., were at the time of the purchase infected with a disease known as tuberculosis, and in that connection the burden of proof is upon the defendants to show by a fair preponderance of the evidence that such disease existed in said cattle at the date of purchase, and you are instructed that, unless the defendants show by a fair preponderance of the evidence that the cattle in question were infected with tuberculosis at the time of such purchase,

then it would be your duty to return a verdict in favor of the plaintiff for the full amount."

This instruction in effect informed the jury that the test of whether there was an express warranty was to be determined by sufficient and competent evidence to the effect that Walters stated, at the time of the sale, that the cattle were free from the disease of tuberculosis. In other words, unless the jury found that Walters made that statement at the time of the sale, there was no express warranty. In view of that instruction, there was nothing for the jury to do except to return a verdict for plaintiff. For there is no evidence showing that Walters expressly warranted that the cattle were free from tuberculosis.

The court in effect instructed that, unless there were words expressly warranting against tuberculosis, there was no express warranty. Certainly this is far from correct, and constitutes a fatal and prejudicial error. If, as alleged, Walters represented that the cattle were in good condition, and were in perfect health, free from disease, and were all right, that constituted an express warranty, at least against every disease, not readily discernible, including tuberculosis. It was not at all necessary nor incumbent upon the defendants to show that, at the time of the sale, Walters specifically warranted the cattle to be free from tuberculosis. All that was incumbent on them to show was that he represented and warranted them to be in perfect health, or free from disease, or all right, as those terms were used with reference to the health of the cattle.

The jury by the instruction should have been informed of the terms of the warranty, and then instructed to the effect that if it found the cattle were not in perfect health, free from disease, and all right, at the time of the sale, then they should find for the defendant. Necessarily, then, if the jury from the evidence did find that the cattle at the time of the sale were tubercular, or were infected with, or had, any other disease, which could not readily be observed, it could find that the express warranty was broken. In other words, it was not at all necessary for Walters to use language mentioning any particular disease, to make him liable on the express warranty as made.

There is sufficient evidence to establish the making of the express warranty by Walters, as alleged by the complaint. The instruction, as given, simply foreclosed the case against defendants. If the jury followed the instructions of the court in this regard, it could do nothing else, except bring in a verdict for the plaintiff.

The motion in this court to dismiss the appeal is denied.  The action was one to foreclose a chattel mortgage.  The answer admitted the matters in equity involved in the case.  It admitted the execution and delivery of the note, and the default in the payment thereof.  It admitted the execution and delivery of the chattel mortgage to secure the same. This disposed of the equitable features of the case, for, if the plaintiff recovered on the note, there was no defense to the foreclosure.  All that remained was defendants' legal defense on the note, based on breach of warranty by Walters in the sale of the cattle, for which defendants claim damages as prayed for in the complaint.

Under the rule announced in Lehman v. Coulter, 40 N. D. 177, 168 N .W. 724, defendants rightly were entitled to have this issue submitted to a jury as a law issue.  In such case the verdict should not be regarded as advisory.  The defendants were entitled to the right of trial by jury of the legal issues, accompanied by proper instructions by the court of the law relative to those legal issues.  This in effect has been defendants' theory of the appeal, and they have perfected their appeal accordingly, and in this we think there was no error.

The court having erred, to the prejudice of the defendants, in giving the instruction above set forth and analyzed, and the giving of which is the basis of the fourth assignment of error, the judgment appealed from should be reversed, and a new trial had upon the law issues involved in the case.

The judgment appealed from is reversed, and the case is remanded to the trial court for further proceedings not inconsistent with this opinion.

The appellant is entitled to his statutory costs and disbursements on appeal.

ROBINSON, C. J., and CHRISTIANSON, J., concur.

BIRDZELL, J., dissents.

BRONSON, J. (dissenting).  The record discloses that this action was fairly and fully tried.  The transcript consists of about 500 pages.  The only reason found for a reversal of this case by the majority opinion is the giving of an instruction by the trial court concerning an express warranty.  I am of the opinion that this instruction as given upon this record was not prejudicial error.

The answer in defense alleges that Walters warranted the cattle to be in good condition, in perfect health and free from disease, and to be in every way all right and in all respects suitable for the establishment and conducting of a herd for purposes of breeding pure-bred Aberdeen Angus registered cattle; that the cattle were not in good condition, perfect health, and free from disease, and were not all right, but in truth and in fact were in bad condition, in imperfect health, and diseased, and a large portion of them were affected with or subject to tuberculosis.

The testimony concerns, almost entirely, the question of whether or not these cattle were affected with tuberculosis when sold. The sole issue accordingly was that of an express warranty and a breach thereof. The appellants contend that under the instruction of the trial court (cited in the majority opinion) the jury were required to find that the word "tuberculosis" was expressly mentioned by Walters, in order to permit recovery by the appellants; that in effect this instructed the jury that a general warranty of soundness would not be sufficient to cover the disease of tuberculosis. The majority opinion practically adopts such contention. I am of the opinion that this is a narrow, technical, and unreasonable construction to be given the instruction of the trial court. The claimed breach of warranty was by reason of the disease of tuberculosis. No other deficiencies in respect to the cattle are asserted in the record. Otherwise the court charged the jury:

"If you find from the evidence that the cattle were warranted to be free from the disease, and that there was a breach thereof in accordance with the instructions I have already given you, and you find that the bull was free from the disease," etc., "then the defendant may be allowed damages therefor," etc.

Again the court instructed:

"Should you find from the evidence in this case that no representations were made by Walters in this case amounting to an express warranty that the cattle were free from the disease complained of in this suit, then it would be your duty to return a verdict in favor of the plaintiff," etc.

Assuredly, under these instructions, if Walters represented or warranted the cattle to be all right in response to the request of the appellants that they wanted a nice, clean, and healthy herd, the jury were amply warranted in finding that this was a representation and warranty that such cattle were not affected with tuberculosis.

The trial court particularly instructed that the decisive test of the

warranty was whether Mr. Walters stated that the cattle were free from the disease of tuberculosis, etc., or that he used such language or words which would leave such an impression in the minds of the defendants. This court has held frequently that the instructions must be taken together, and, if when considered together they fairly present the law, they will not be condemned because one alone may not be complete in itself. Munster v. Stoddard, 170 N. W. 871; McGregor v. G. N. R. Co., 31 N. D. 471, 488, 154 N. W. 261, Ann. Cas. 1917E, 141. Furthermore, if Walters represented the cattle to be all right, in response to appellants' request for a nice, clean, and healthy herd, such language necessarily meant that they were free from the disease of tuberculosis. In Mitchell v. Pinckney, 127 Iowa, 696, 104 N. W. 286, the vendor warranted the animals to be all right and sound in every particular. The sole contention made for breach of the warranty was that the cattle were affected with "contagious abortion." In one of the instructions of the court the jury was told that if there was a warranty of any or all of the cattle, and the warranty was substantially as claimed in the petition, and had been broken, the defendant would be liable. The contention was made that the jury was not limited to the particular breach relied upon. The court held that such contention was hypercritical. In my opinion the contention in this regard is likewise hypercritical. The appellants consented to an oral charge by the court. No instructions were requested by the appellants. No objection was made to the instructions as given. No request was made for a more specific and comprehensive instruction. See McGregor v. G. N. R. Co., 31 N. D. 471, 488, 154 N. W. 261, Ann. Cas. 1917E, 141. Also Huber v. Zeiszler, 37 N. D. 556, 561, 164 N. W. 131. I am of the opinion that the jury was not misled and did not misunderstand the issues by reason of the particular instructions upon which reversal is granted by the majority opinion.