[File No. 5994.]

NORTHWESTERN NATIONAL BANK OF MINNEAPOLIS, MINNESOTA, a Corporation, Appellant, v. CAROLINE HOWLETT.

MARIE KELSO and Frances Johnson, Respondents.

(247 N. W. 57.)

Opinion filed June 30, 1932. On Rehearing March 6, 1933.

*Knauf & Knauf (S. E. Ellsworth,* on oral argument), for appellant.

164

*Coffey & Strulz,* for respondents.

BURR, J. The plaintiff seeks to foreclose a chattel mortgage given by the defendant and covering ten cattle and two hundred and fifty sheep with increase thereof. A warrant of seizure was issued and the cattle and sheep taken, the sheriff certifying that he took three hundred and sixty-two sheep into his possession.

The intervenors made a third party claim for the sheep and on being refused obtained from the court leave to intervene.

The intervenors allege they are the owners of the sheep; deny they ever authorized the defendant to mortgage the sheep; allege that if plaintiff has a mortgage on the sheep the mortgage is void; that the sheriff took four hundred and thirty-eight sheep worth $4,818 and that while in his possession the said sheep were damaged in the sum

of $3,000. Intervenors pray judgment for the return of four hundred and thirty-eight sheep and for $3,000 damages, or in case the sheep are not returned then judgment for their value in the sum of $4,818.

The plaintiff's reply alleges only three hundred sixty-three sheep were taken, that these belonged to Caroline Howlett, or if the intervenors were the owners then the mortgage was given with the consent of the intervenors.

The case was submitted to a jury who returned a verdict in favor of the intervenors for the possession of four hundred and thirty-eight sheep and lambs and $800 damages, or in case the sheep and lambs were not returned then in their value in the sum of $3,066. Judgment was entered accordingly.

The plaintiff made a motion for judgment notwithstanding the verdict setting forth forty specifications of error, which motion was denied. Plaintiff then moved for a new trial upon similar specifications of error which motion was also denied.

The plaintiff appeals from the judgment, from the order denying the motion for judgment notwithstanding the verdict, and from the order denying the motion for a new trial setting forth forty-four specifications of error, thirty-three of which deal with the rulings of the court in the admission of testimony, one in ruling that the case was a jury case, two in instructions to the jury and the remainder with the rulings on motions for judgment, etc.

The court submitted the case to the jury on the theory that the issue involved was one for the jury. The issue tried was not the one between the plaintiff and the defendant; but the case framed by the complaint in intervention and the reply thereto. The only issue involved was the ownership of the sheep taken. The issue was between the intervenors asserting ownership and the plaintiff denying it.

Under the provisions of § 7413, Comp. Laws the complaint of the intervenor is to be tried "as if it was an original complaint." Whether the case is one triable to the court or to a jury is determined by the nature of the action. Under the provisions of § 7608 of the Comp. Laws "an action for the recovery of . . . personal property must be tried by a jury, unless a jury trial is waived . . . or reference ordered. . . ." As between the intervenor and the plaintiff in this case the intervenor is the plaintiff in the action in intervention and the

plaintiff in the original case becomes the defendant. As stated in Lacroix v. Menard (La.) 3 Mart. N. S. 339, 15 Am. Dec. 161; the intervenor "stands in the situation of a plaintiff" and such "intervenor is entitled to a jury trial." In the note to 16 Am. Dec. 184 it is shown the rights of the intervenor "are as comprehensive as those of the original parties." See also Rixa v. Rixa, 35 Misc. 227, 71 N. Y. Supp. 815, 816; 20 R. C. L. 693, and note to 123 Am. St. Rep. 311.

Even where an action is begun as an equity case, it may be changed to a jury case by subsequent pleadings, which outline the issues in dispute. Hart v. Wyndmere, 21 N. D. 383, 131 N. W. 271, Ann. Cas. 1913D, 169. Lehman v. Coulter, 40 N. D. 177, 168 N. W. 724; Farmers' Nat. Bank v. L. Tudor & Son, 48 N. D. 200, 211, 183 N. W. 845. If this may follow in actions between original parties, much more so in case of an intervenor, in the trial between him and the plaintiff, when the issues formed by the pleadings are those triable to a jury. There was no error in holding the issue was one properly triable to a jury.

The thirty-three specifications of error, based upon the rulings of the court in the admission of testimony, deal largely with two main propositions—the ownership of the sheep at the time the mortgage was given to the plaintiff, and the value of the sheep at the time they were taken by the sheriff.

The defendant purchased from the Security State Bank of Medina some cattle and gave a mortgage on them for the purchase price—the mortgage being drawn by Mr. Schrawder, the cashier. The defendant claims the sheep were included in the mortgage without her knowledge and that she told the cashier the sheep belonged to the intervenors, who are her daughters. The mortgage was renewed and again the sheep were included, the renewal being assigned to the plaintiff.

The claim of the intervenors is that in the spring of 1915, when they were mere slips of girls, a neighbor presented them with thirty-two motherless lambs; that they took care of these lambs and the sheep in question are the increase thereof; that they had no knowledge that the sheep were mortgaged, and never consented to it.

The sheep were assessed in the name of the mother but the assessor testified that this was done because the girls were under age. The mother was a witness for the intervenors and testified that she was not

the owner of the sheep, never was, and that she told this to the cashier at the bank at the time the mortgage was taken.

It is not necessary to set forth all of the evidence but the foregoing is sufficient as a basis for the discussion of some of the specifications of error.

Over the objection of the plaintiff that the testimony was hearsay, incompetent, immaterial and in no manner binding upon the plaintiff the counsel for intervenors was permitted to ask twelve witnesses whether the defendant had at any time made statements as to the ownership of the sheep, and they testified that at intervals between the date of the trial and as far back as 1919 she had stated the sheep belonged to the girls.

These witnesses were called by the intervenors to testify what a third person to this action said relative to the title of property in the possession of the third person. The mother was this "third person," so far as this suit is concerned. She had testified that she was in possession of the sheep; but was not the owner. The testimony offered was statements made by a third person to the witnesses and the rule is that such testimony is hearsay and inadmissible. If these twelve witnesses could so testify, then they could have testified, even if the mother did not testify, and the hearsay character would become more apparent. It would then be "that kind of evidence which does not derive its value solely from the credit to be given to the witness himself, but rests, also, in part, on the veracity and competency of some other person." This type is pure hearsay. Hopt v. Utah, 110 U. S. 574, 581, 28 L. ed. 262, 266, 4 S. Ct. 202. It is no less hearsay because the mother had already testified.

During the trial the mother was asked if she had not made such statements. Objections were made on the ground that these were hearsay but the record does not show she answered.

Intervenors were trying to show statements made out of court by the one they said had possession of the property. In Parliman v. Young, 2 Dak. 175, 4 N. W. 139, 711, the defendant who claimed under one Wilson, offered to show by his own testimony that a liveryman who had possession of the horses in question had stated they were the property of Wilson and that he was keeping them for Wilson. The Territorial Court held the evidence was not admissible; that the testimony

of the liveryman himself might be admissible, but not the testimony of some one who heard him say so. This is the situation here. The testimony of the mother that she was not the owner was admissible, but not the testimony of some one else who heard her say so. In 10 R. C. L. 960, the rule is laid down that "statements made by a witness to other persons are no exception to the hearsay rule" except where attempt is made to impeach the witness, or sometimes where the statement sought to be permitted is contradictory to what the witness has said and one is permitted to examine his own witness because of unforeseen hostility. Such is not the situation in this case. The evidence presented here was for the purpose of strengthening the witness's testimony. Re Dolbeer, 153 Cal. 652, 96 Pac. 266, 270, 15 Ann. Cas. 207, the exceptions are well discussed. See also Culpepper v. State, 4 Okla. Crim. Rep. 103, 111 Pac. 679, 31 L.R.A.(N.S.) 1166, 140 Am. St. Rep. 668.

In this action against the mother statements by her that she was the owner could be shown by plaintiff. They would be relevant and admissible against her.

There are exceptions to the rule against hearsay testimony—such as declarations against interest, matters of public and general interest, statements that are "part of the res gestæ" etc.

The respondent cites numerous cases wherein the general proposition is cited that "the statements of a third person in possession of property, as to whom he holds it for, or as to who is the owner, are not hearsay, but competent evidence to prove the facts stated. They are a part of the res gestæ, and characterize the possession," citing Elwood v. Satterlee, 68 Minn. 173, 71 N. W. 13; Brown v. Kohout, 61 Minn. 113, 63 N. W. 248; Stockton Sav. Bank v. Staples, 98 Cal. 189, 32 Pac. 936; Lowman v. Sheets, 124 Ind. 416, 24 N. E. 351, 7 L.R.A. 784; Ohde v. Hoffman, — Iowa, —, 90 N. W. 750; Handlan-Buck Mfg. Co. v. Waterloo Drop Forge Co. 173 Iowa, 452, 155 N. W. 802; Hanson v. Shepherd, 154 Minn. 277, 191 N. W. 599; and other cases in support of this general proposition.

The quotation selected is sound law when applied to the facts involved in the cases noted, but an examination of these cases shows that the testimony sought to be elicited was brought out by one who attempted to show statements made against interest, such as in the cases of Hanson

v. Shepherd and Ohde v. Hoffman, and therefore come within the exceptions. In the former case one B had sold the property to the plaintiff and the defendant and a witness were permitted to testify that B under whom plaintiff claimed had said he did not own the property, though on the trial B testified he did. The defendant had a right to show B had disclaimed ownership in himself as the defendant was levying upon the property as property of one from whom B admitted he got the property originally.

In the case of Ohde v. Hoffman, — Iowa, —, 90 N. W. 750, supra, the opinion does not state who inquired as to what the defendant said as to ownership, but apparently the plaintiff was attempting to show the defendant claimed to be the owner of the property involved—a fact against interest of the defendant and of the intervenors who claimed under him. It was held the rejection of such testimony was error, and it would be under such circumstances.

The California case was an action to quiet title and the court admitted statements of one in possession as to the nature of his possession in order to show that one of the defendants had notice that his claim was adverse.

The Minnesota case of Brown v. Kohout was also an action in ejectment, the defense being adverse possession under a deceased person, and the declarations of this deceased person were admitted in evidence in order to show the character of the possession and that it was indeed adverse.

It is difficult to tell from a reading of the Indiana case how the disputed evidence came to be presented. The opinion says "the court over the objection of the appellant (the plaintiff) permitted the appellee to prove certain declarations made by himself in relation to the ownership of the property in controversy but these declarations were made while in possession of the property and under the rule as stated—it was admissible as part of the res gestæ." However the opinion cites Durham v. Shannon, 116 Ind. 403, 19 N. E. 190, as authority and that case says: "Declarations made by decedent while in possession of the mare, in derogation of his title, are admissible not only against him, but against one claiming title under him after such declarations."

Intervenors claim the statements sought to be proven are "part of the res gestæ" and are admissible as such. The primary facts which

constitute the matter at issue and "which are the undesigned incidents of a particular litigated act" are admissible "when illustrative of such act." McMahon v. Chicago City R. Co. 239 Ill. 334, 88 N. E. 223. But by no stretch of imagination can it be said that these isolated statements of the mother, totally unconnected with each other, covering such a period of years, are "part of the res gestæ," in this case.

Testimony called for was clearly hearsay, it was not part of the "res gestæ," it did not fall within any of the exceptions to the rule against hearsay, and therefore its admission was erroneous.

Owing to the number and character of the witnesses, the energy displayed in the presentation of the testimony, the issue involved and the relationship of these statements to this issue it is clear the testimony introduced was prejudicial and it must have had an important bearing upon the decision. The tendency was to show that all through that neighborhood for a period of between ten and fifteen years everybody knew the sheep belonged to the intervenors and not to the mother. Title to property does not rest upon rumor, general impression, or public opinion, and the issue in this case was title in the intervenors and not in the mother.

It is not necessary to pass upon the alleged errors regarding the quality and character of the sheep and the damage which accrued as well as failure of proof as to their value. The objections to the lack of testimony may be quite serious and yet if defective, the defects may be supplied on another trial. The same holds good with reference to the alleged error in part of the charge to the jury.

For the error in admission of this erroneous testimony a new trial should have been granted, and therefore the order denying a new trial is reversed and a new trial ordered.

CHRISTIANSON, Ch. J., and NUESSLE, BIRDZELL and BURKE, JJ., concur.

BURR, J. (On rehearing.) The intervenors urge that Caroline Howlett is not a "third party" in this suit; that there is a "serious inaccuracy" in the opinion; and that the testimony of these twelve witnesses discussed in the opinion is admissible.

The inaccuracy referred to consists of this statement in the opinion

that Mrs. Howlett "as far back as 1919" stated to the twelve witnesses, or some of them, that the girls were the owners of the sheep; whereas it should be "as far back as 1915." The testimony does show it was as far back as 1915.

A reargument was ordered on this proposition only, to wit: was the testimony of Gilbertson et al., as to the statements made by Mrs. Howlett regarding ownership of the sheep admissible? This proposition was to be argued in the light of the facts that Mrs. Howlett is not a party to this action being tried and says she never owned the property involved; that the intervenors were never in possession of the property involved, and claim no title derived from Mrs. Howlett.

We must not overlook the fact that the case at bar is an action brought by the intervenors against the bank, claiming title to certain personal property in possession of the bank. This is the case before the court. The burden of proof is upon the intervenors and they must show title in themselves. In order to prove title in themselves they produced these witnesses who testified that Caroline Howlett—the third party—said the intervenors were the owners of the property. Such statements by Mrs. Howlett were not made in the presence of the plaintiff or its agents.

To justify the admission of such testimony the intervenors quote copiously from Wigmore on Evidence, especially from that portion of the work dealing with "verbal acts" as part of the res gestæ. Mr. Wigmore discusses this proposition and at 3 Wigmore, 1778 we find:

"Accordingly, it has never been doubted that all declarations *by the occupant,* importing *a claim of title* in himself, are admissible as verbal parts of his act of occupation, serving to give it an adverse color; while his declaration of *disclaim,* conceding another's title, are clearly receivable as giving it the contrary color." (Italics Mr. Wigmore's.)

Intervenors cite Roebke v. Andrews, 26 Wis. 312; Griswold v. Nichols, 126 Wis. 401, 105 N. W. 815; Avery v. Clemons, 18 Conn. 306, 46 Am. Dec. 323, and other cases. The cases cited are authority for the rule that where one in possession of the property claims title to the property his declarations of ownership may be shown in proof of his title, or where the possession is offered as proof of title the statements made by the possessor may be shown as explanatory of the nature of the possession. That is not the issue here. The intervenors

do not claim title under their mother but from an independent source. They were required to prove ownership in themselves of property found in the possession of another. They undertook to make such proof by showing that the third party to the transactions, during a course of years and while she was in possession, said that the intervenors owned the property. They are trying to prove their ownership of property not in their possession, and that never was in their personal possession by statements attributed to one who had possession all of the time. If the mother were claiming now to be the owner such statements of hers would be competent as declarations of disclaim. In other words, as Mr. Wigmore says, where the occupant—that is Mrs. Howlett— made declarations importing a claim of title in herself her declarations being part of the act of occupation are admissible or her declarations of disclaim conceding title in intervenors are admissible. They are admissible as an attack upon the occupant's title. This does not say they are admissible as independent proof of title in some one else.

The testimony of these witnesses was received over strenuous and sufficient objection. Nowhere did the intervenors state that the offered testimony would be limited to the attack on the mother's title—even if such attack was the sole purpose at the time of the offer. The mother was not claiming title in herself. By her testimony and by her answer in the action brought against her by the bank she expressly disclaimed title in herself. The testimony was offered as proof of the title in the intervenors.

It must be remembered the intervenors claim they obtained the sheep from a source independent of the mother, and during their minority, and that because of their youth, and the fact that they were living with their mother, the sheep were turned over to the mother for them.

We do not say such testimony is never admissible. Impeachment, contradiction of proof of ownership by plaintiff derived from possession, when offered by plaintiff, and other reasons may make it admissible on a new trial.

The testimony offered went far beyond showing the statements of the mother that she was not the owner of the sheep, and how and why she got possession of the sheep. To prove title in the intervenors these witnesses were permitted to testify that some other person told them the girls were the owners and that this was said by the one who had

possession. If such testimony is admissible, under the circumstances in which it was offered, then all that would be necessary for the intervenors to make out a case would be to offer these ten or twelve witnesses and show that somebody else said the intervenors were the owners and thus establish their title without even testifying themselves, and if this were so they could also establish their title without having the testimony of Luessen the owner of the sheep from which the flock came. If the testimony of these witnesses is competent to establish title in the intervenors then it is competent even if the intervenors themselves did not testify.

While the matter is not without difficulty we are satisfied it was error on the part of the court to permit these witnesses to testify that the mother told them the intervenors were the owners, and therefore we adhere to the opinion originally rendered.

NUESSLE, Ch. J., and CHRISTIANSON, BIRDZELL and BURKE, JJ., concur.