[File No. 6239.]

NORTHWESTERN NATIONAL BANK OF MINNEAPOLIS, MINNESOTA, a Corporation, Appellant, v. CAROLINE HOWLETT,

and

MARIE KELSO and Frances Johnson, Respondents.

(255 N. W. 574.)

Opinion filed May 23, 1934.   Rehearing denied July 3, 1934.

*Knauf & Knauf,* for appellant.

*J. A. Coffey,* for intervenors and respondents.

BURR, Ch. J. A new trial was granted in Northwestern Nat. Bank v. Howlett, 63 N. D. 163, 247 N. W. 57, where the facts are stated. The issues arising between intervenors and the bank were submitted to a jury and a verdict was rendered for the intervenors for the recovery of "438 sheep, or the value thereof on Dec. 8, 1930, in the sum of $4,599.00, in case delivery cannot be had." Judgment was entered upon this verdict and thereafter the bank moved for judgment notwithstanding the verdict or for a new trial which motion was denied. From the order denying this motion the bank has appealed.

There are sixty-five specifications of error—two alleging the court erred in trying the issues between the bank and the intervenors before the decision of the case between the bank as plaintiff and Mrs. Howlett as defendant; fifty-one in reception or rejection of testimony; one on failure of the court to instruct the jury on a certain point; five with reference to the insufficiency of the evidence to justify the verdict; and the remainder in the action of the court in ordering judgment and overruling the motion for a new trial.

There was no error on the part of the court in trying the issues between the intervenors and the bank before determining the issues between the bank and the defendant Howlett.

The bank as plaintiff brought action against Mrs. Howlett to foreclose a chattel mortgage which she had given on the sheep involved in this lawsuit. Marie Kelso and Frances Johnson are the daughters of Mrs. Howlett and were permitted to intervene on their claim that they were the owners of the sheep mortgaged. The issue between the bank and Mrs. Howlett was a matter properly triable to the court; and the issue between the intervenors and the bank was triable to a jury, being for the recovery of specific personal property. See § 7608, Compiled Laws.

It is the claim that under our statute "the issues of law must be first tried unless the court otherwise directs" as set forth in § 7606 of the Compiled Laws. This section has reference to an issue of law and an

issue of fact arising between the same parties "upon different parts of the pleadings *in the same action.*" Even if applicable to this case it is a matter of discretion for the trial court to determine which issue would be determined first. See § 7606 of the Code.

But as shown in the former case, in this relation "the issue was between the intervenors asserting ownership and the plaintiff denying it." This made it, in effect, a separate action. The main question involved in intervention was the ownership of the sheep, and as the presiding judge was called in to try this feature it was proper for him to proceed without reference to the other matter pending.

There were four main issues in the case to be determined by the jury—were the intervenors the owners of the sheep at the time they were mortgaged? If so, did they permit their mother to mortgage them and are thus estopped from denying the bank's mortgage? How many sheep were taken by the sheriff and delivered to the bank? What was the value of the sheep at the time they were seized?

Caroline Howlett was indebted to the Security State Bank of Medina and gave a mortgage upon the sheep in question to secure the debt represented by promissory notes. The notes were renewed from time to time and together with the chattel mortgage were assigned to the bank in this case. The debt not being paid this bank commenced an action to foreclose the mortgage. A warrant of seizure was issued by the court, directed to the sheriff, requiring him to seize and take into his possession "personal property belonging to the defendant Caroline Howlett—to wit—438 head of sheep and 15 head of cattle." Under this warrant the sheriff seized the sheep involved. The intervenors appeared claiming to be the owners of the sheep. No sheep were returned to Mrs. Howlett nor to the intervenors.

Intervenors' theory of title is based on the claim that when mere children a bunch of motherless lambs had been given to them by one Luesson, and that the sheep in question are the increase from such lambs. They testified positively to this. Luesson testified that he had given thirty-two lambs to the mother as the lambs were dying and "they could feed them some of this milk and they would give the kids a good start," saying that by the term "kids" he referred to the daughters; and that they were turned over so that "the kids should have the benefit from them." He stated this was his purpose and in-

tention although he admitted that in the action between the mother and her husband he had said he had given the lambs to Mrs. Howlett. Other witnesses testified they heard Luesson state he was giving the lambs to the girls "if they want to take the trouble of raising them on the bottle." The evidence in opposition to this comes from acts of apparent ownership on the part of the mother in that she had the sheep in her possession, mortgaged them, furnished the feed, sold some of the sheep from time to time, sold the fleeces, used the money for the maintenance of the household, said they were hers and when the intervenors married they left the sheep with the mother and in the mother's possession. Testimony was offered showing direct statements on the part of the mother that she was the owner of the sheep, and that at no time did she disclaim ownership, and specifically did not, at the time she mortgaged the property, say the daughters owned the sheep, though all this is strenuously disputed by the intervenors. They offer considerable testimony showing that at the time the mother mortgaged the sheep she stated that they belonged to the girls. An examination of all of the testimony leads us to believe that it was a matter primarily for the jury to determine. All this was submitted to the jury, not only to this jury but to the jury in the previous case, and both juries found ownership in the intervenors. There is evidence to support the verdict on this point and the trial court refused to disturb it. We must therefore hold that the intervenors proved they were the owners of the sheep at all times involved.

It is claimed by the bank that the intervenors knew the mother was mortgaging the sheep and permitted her to do so. The original indebtedness arose over the purchase of some cattle and the mother gave the mortgage on the sheep and other stock for the purchase price. There is testimony on the part of the bank showing that the intervenors knew of these mortgages being given, that from time to time one or the other or both were in the bank when the mortgages were being executed, and that the name of one of them appears as witness on a mortgage to another party given at the time when the question of the ownership of the sheep was discussed. This intervenor denies signing as a witness. Both intervenors assert strenuously that until about the time of this seizure, they did not know their mother had mortgaged the sheep; that they were not present when any statement

was made showing the sheep were mortgaged; and deny being in the bank or at the home when the mortgages were executed. Again this is a matter for the jury to determine primarily. The trial court did not see fit to overturn the verdict though this matter was vigorously presented. We therefore hold that the verdict decides this issue.

The intervenors bring action to recover 438 sheep and this is the number allowed them by the jury. The inventory made by the sheriff and attached to his return states there were but 362 sheep taken. It is admitted one was lost. It is true one of the intervenors testified "we counted them a couple of days before they took them" and at this time there were 438. Even with this there is no testimony that the number in the corral two days later was the same. There is no direct testimony on the part of any one that 438 sheep were taken by the sheriff. On the contrary the testimony shows conclusively that the sheep when seized were placed in a stockyard and the next day they were let out through a gate one by one and counted. The testimony of every one who testified as to the count is that there were 362 sheep seized. There is some testimony that 360 live sheep were counted by one of the intervenors several days after the seizure and that she noticed some dead sheep, some of which she recognized as belonging to the flock. But the evidence is conclusive that all that were taken were 363, and 362 were turned over to the bank.

The jury found the value of the 438 sheep to be $4,599.00, which would make an average for the flock of about $10.40 per head. There is plenty of testimony showing the good quality of the sheep, and nothing to dispute it. There is testimony showing the flock was about evenly divided between lambs and older sheep; and that the flock was worth at that time on an average of $12.50 per head. Some witnesses said $12.00 per head, others less. The cashier who drew the mortgage testified that sheep of like quality were worth $6.00 to $6.50 per head, that sheep at the time these were taken were selling for $9.50 per head, that this was the highest price paid, that the prices for sheep at that time at the public sales were from $6.50 to $7.00. Witnesses were asked to state the value per head of this particular flock, averaging the old and young, and placed it as high as $12.00 to $12.50. Evidently the jury put an average value of about $10.40. There is evidence to support this finding.

Thus the alleged errors based on the theory that the evidence does not sustain the verdict and that the court erred in failing to grant the motion for a directed verdict or for a new trial are not substantiated except as to the number of the sheep seized. As to this, the record shows the intervenors to be the owners of 363 sheep seized by the sheriff which sheep were worth on an average of about $10.40.

Appellant says the court erred in failing to instruct the jury that "it is their duty to scrutinize the testimony of Mrs. Kelso and Mrs. Johnson and Mrs. Howlett, their mother, very closely, owing to the relationship which existed between them" and the fact that Mrs. Howlett kept the sheep, cared for them and "handled them as her own from 1915 to December 1930, accounting to them (the daughters) for no part of the proceeds of sales of sheep, lambs or wool during those fifteen years." No request was made for any specific instruction on this line. The jury were instructed that they should take into consideration the intelligence of the witnesses, the reasonableness or unreasonableness of their statements, their interest in the outcome of the trial, etc. and "applying your knowledge and observation of human actions, motives and affairs you will find the truth as it shall appear to you from the evidence in this case."

The court stated specifically what the issues were, what the intervenors had to prove and that the burden of proof was upon them. In the absence of a specific request for instruction on some special feature of the case error cannot be predicated for failure to charge on the point desired when the court has fairly presented the issues to the jury. See Landis v. Fyles, 18 N. D. 587, 120 N. W. 566; Buchanan v. Occident Elevator Co. 33 N. D. 346, 157 N. W. 122.

The fifty-one alleged errors in the reception and rejection of testimony include many allegations regarding the action of the court in sustaining or overruling objections. We do not find it necessary to specify the greater bulk of these. Suffice it to say no reversible error has been shown.

One of these alleged errors is the refusal of the court to permit an offer of proof made by the bank to impeach the witness Howlett. Charles Schrawder, the bank official who drew the mortgage, was interrogated by the intervenors on cross-examination, with the announced purpose of showing that before the mortgage was executed

he knew that Mrs. Howlett disclaimed ownership of the sheep. It appears that in 1921 there was an action brought by Caroline Howlett against the Stock Yards National Bank. An attempt was made to show that the witness Schrawder was present at the trial and heard Mrs. Howlett testify that she was not the owner of the sheep. He denied being present at the trial; denied that he heard the testimony, that Mrs. Howlett at any time in his presence and in his hearing made the statement that she was not the owner of the sheep, and that she said the sheep belonged to the intervenors. Intervenors then placed Mrs. Howlett on the stand. She testified that at the time of the trial of her case against the Stock Yards National Bank Mr. Schrawder was present and in his presence and hearing she stated "that the sheep were not mine, that the sheep belonged to the girls." She also testified that at the time of the execution of the mortgage "I told him the sheep did not belong to me, that the sheep belonged to the girls;" and also "I didn't have no business mortgaging them." On the cross-examination of Mrs. Howlett the bank attempted to show that in an action between her and her husband, tried in 1925, she testified she was the owner of the sheep. The court sustained an objection to this cross-examination. Mrs. Howlett had not been examined as to any statements she made in the trial of the action between herself and husband in 1925. Her testimony was confined entirely to the contradiction of the witness Schrawder when he said that he had not heard her testify in the Stock Yards case, and that she did not tell him the sheep belonged to the girls. The court was justified in sustaining the objection.

The bank then offered to prove that, on this trial in 1925 of the action between Mrs. Howlett and her husband, she testified the sheep belonged to her; and the same offer of proof including the extraneous offer to show that by the record in the same case Mr. Luesson testified he had given the lambs to Mrs. Howlett. The testimony of Luesson in this case at bar was given by deposition. Nowhere therein had he been examined as to testimony which he gave in the case of Howlett v. Howlett. The court properly denied the offer of proof when it was made for the purpose of cross-examining Mrs. Howlett, and also properly denied it because it contained matters which could

not be included, namely, the attempted impeachment of the witness Luesson. The court is not required to separate the good from the bad offer. See Krogh v. Great West Assur. Co. 55 N. D. 722, 214 N. W. 897.

Counsel for the bank stated that he offered it as part of the cross-examination and also that·he would offer it as independent proof. To this offer of independent proof to show that Mrs. Howlett had claimed to be the owner the court said: "That is another story. I have not refused to let you do that—if you can show that these girls are not the owners of these sheep by showing that Mrs. Howlett owned them and she said so in 1925, if you can prove she said so, all right." Thus the court did not rule out the independent proof. No further attempt was made by the bank to offer any independent proof showing Mrs. Howlett was the owner of the sheep. No witness was called nor did the court prevent testimony being offered. There was no error in the court in connection with the offers of proof.

Upon examination of the entire case we are constrained to hold that though the story of the intervenors that when they were little girls the sheep were given to them and the sheep taken are the increase of the gifts, may appear to be improbable, and though there are numerous factors, such as the acts of apparent ownership on the part of the mother, her treatment of the flock, failure of the girls to take them when they married and left the maternal home, though explained by the fact that they returned and many other features which cast doubt on their story, yet there is ample proof to support the claim. The jury were charged as to the reasonableness or unreasonableness of the story told by the witnesses. Two juries have found them to be the owners, and thus accepted their statements as true.

The judgment of the court is modified to the extent of permitting a recovery for 362 sheep and no more, at an average of $10.40 per head with interest and costs in the lower court, and with costs to the appellant in this court, there being a substantial reduction in the amount of the judgment. With this modification the judgment is affirmed.

BURKE, NUESSLE, CHRISTIANSON and MOELLRING, JJ., concur.