**BORNER**

v.

**MONTANA–DAKOTA UTILITIES CO.**

No. 7375.

Supreme Court of North Dakota.

April 9, 1954.

Rehearing Denied July 1, 1954.

J. K. Murray, Bismarck, for plaintiff and respondent.

Kelsch & Scanlon, Mandan, for defendant and appellant.

SATHRE, Judge.

The plaintiff brings this action against the defendant, a foreign corporation, to recover damages for personal injuries claimed to have been sustained by reason of the negligence of the defendant in repairing a furnace in the residence of the plaintiff. The complaint alleges that the defendant at

the request of the plaintiff did undertake to repair and check the furnace in her residence; that the defendant carelessly and negligently performed its work by and through its agents and servants; that it repaired and altered said furnace in a careless and negligent manner and permitted unburned gas to escape into the basement and dwelling of said home and residence; that by reason thereof plaintiff while in her said home unknowingly inhaled a large quantity of deadly gas and became seriously ill and was required to go to a hospital under the care of doctors and nurses and that at all times since, the plaintiff has been ill by reason thereof and permanently injured and crippled and has suffered great pain to her damage in the sum of $2,990. Judgment is demanded for said amount.

The defendant answered by general denial, specifically denying each and every allegation in the complaint, except that it admits that it is a foreign corporation and that it is engaged in the business of installing and repairing furnaces in homes and residences including the home of the plaintiff. As a further defense it alleges that the injuries which the plaintiff alleges she sustained, if any, were occasioned by and through the direct result of her own contributory negligence and failure to exercise ordinary care and caution for her own safety.

The case was tried in the district court of Morton County before the Honorable J. O. Wigen, District Judge and a jury.

The jury returned a verdict in favor of the plaintiff and assessed her damages in the sum of $200 "for inconvenience sustained". Judgment was entered for the plaintiff in accordance with the verdict and the defendant appealed.

The plaintiff Emma E. Borner testified in substance as follows:

That in 1944 she purchased a home in the city of Mandan, Morton County, North Dakota; that the said home had a hot-water coal burning heating plant and that thereafter she employed the defendant to convert the same into a gas burner with a thermostat by which the amount of heat desired may be controlled; that during the summer months the gas was turned off; and that it was turned off during the summer of 1951. She testified further that she had several roomers or tenants living with her in her said residence; that on or about the 10th day of October she called the defendant's place of business by telephone to send a man to check the furnace and to repair it if needed and turn on the gas and light the pilot light; that one of the girls at the office answered the call and the plaintiff said she would like to talk to one of the men; that she was informed that the men were not in but the office girl said she would give the message to Mr. Gates the manager and he would send someone to do the work; that no one came to start the furnace and on the 16th day of October she again called the defendant company and a girl answered the telephone; that plaintiff referred to her previous call about wanting the heat turned on, to which the girl replied, "You can talk to Mr. Gates, he is here"; that Mr. Gates came to the telephone and that she asked him if the girl had given him her message and that Mr. Gates replied "they had been up there, why don't you turn on your heat". This conversation with Mr. Gates she claims was on the 16th day of October between 4 and 5 o'clock in the afternoon. After having talked to Mr. Gates over the telephone she turned the thermostat up to 72 degrees and then felt the heat coming on. She stated further that she had called the defendant's office several times to check the furnace but had not written down the dates that she called. She went to bed that evening about 10 o'clock and she became sick during the night. Sometime later during the same night she "passed out" and did not "come to" until several hours later. She recalled that Dr. Blumenthal was there and it must have been about 3 o'clock in the morning. Dr. Blumenthal made several trips thereafter and treated her; she found it difficult to talk. She stated that up to this time she had been perfectly well but since then she has had pains in her lungs and that her hearing has been weakened and she found it difficult to breathe. It was discovered that on the night she became sick gas fumes had escaped from the furnace and had come into the several rooms of the house;

that the gas fumes were the cause of her illness and that several other occupants of the house had also become ill. Plaintiff's husband Paul Borner testified that he lived with the plaintiff and that he operated a saw mill some 8 or 9 miles from Mandan; that when he came home on the evening of the 16th he had discovered that his wife and other occupants of their residence were ill and that Dr. Blumenthal was treating his wife, the plaintiff. He did not go to work on the 17th of October and it was found that gas fumes were leaking from the furnace. He thereupon called the defendant's manager Mr. Gates to come and check the furnace and that in response to his call Mr. Gates and one Mr. Kredler came to his residence and that they went into the basement and found that the vent pipe leading from the furnace to the chimney was down on the floor, but that the gas was burning in the furnace. He testified further that he had a work bench in the basement and that he went down to the basement two or three times a week and that he was in the basement on the 15th of October and that the vent pipe was up and in its proper place; that he was first "gassed" on October 16th and that the first time he saw the vent pipe down was on the evening of October 17th.

The defendant obtained an order from the District Court requiring the plaintiff to submit to a medical examination. Accordingly she was examined by Dr. John Cartwright of the City of Bismarck. Dr. Cartwright was called as a witness by defendant and was examined by counsel for both parties. The examination was lengthy and it is not necessary to recite his findings in detail here. The plaintiff inhaled the gas fumes on October 16 and 17, 1951 and she was examined by Dr. Cartwright on April 21, 1952. The doctor testified that he made a thorough examination of plaintiff particularly with reference to the effect of gas fumes upon the vital organs and the general health of the patient. From his examination he concluded that all of her vital organs functioned normally and that her general health was good and that he found no injurious effects from gas fumes which she might have inhaled.

Dorothy Maas, general bookkeeper and cashier of the defendant, testified that on September 14th she answered a telephone call from the plaintiff Mrs. Borner, and that she wrote down the work order in a book used for that purpose known as Commercial Service Record. The order form is in triplicate and all copies carry the same number 129781. The top sheet is placed in a basket called the "gas basket" and the service men take the work orders from the gas basket. Defendant's exhibits D and E are original and duplicate of the work order taken from the plaintiff on September 14, 1951. Defendant's Exhibit D, was admitted in evidence and is as follows:

"Commercial Service Order No. 129 781

Location, Mandan                                        Date 9/14,1951
Name        Paul Borner                Address        310 2nd Ave. NW
            Service Request Received from Mrs                    8–115
Nature of Order—Light furnace Pilot
Charge account No. M 6                      D, Defendant's Exhibit
                                               –D–GFT 4–22–52

Contract No.                          Billed on sales Ticket No. 10338 by A. B.
            Material and Time used
Unit                    Price                   Cost Bill Cust.
      Service Charge                                $1.00
                    Total . . . . . . .
Order taken by D. M.
Order completed by Kredler Date 9/14–51     Time 2:05 P.M.
            (Remarks on Reverse Side)
Received Sept. 17–1951
Montana-Dakota Utilities Co.
Bismarck, North Dakota."

Defendant's exhibit E is identical with exhibit D, and carries the same number 129781.

Defendant's exhibit F, dated September 15th referred to in defendant's exhibits D and E as sales ticket No. 10338, was introduced in evidence. This is in the form of an invoice showing services rendered, a copy of which was sent to the plaintiff, and is as follows:

"Local Office Copy
Montana-Dakota Utilities Co.
Mandan, North Dakota.
8-115

| Invoice No. 10338 | | Date | 9-15-1951 |
|---|---|---|---|
| Name | Paul Borner | | |
| Address | 310-2nd Ave. N.W. | Contract No. | |
| Terms: Cash when billed | | Amount paid | |

| Quantity | Description | Amount |
|---|---|---|
| Light Furnace Pilot Service Charge | | $1.00 |

M-5
CSO #129781
Stores
  A

Defendant's
Exhibit
F

3    GF 4-23-52"

Arthur Kredler, a witness for the defendant, stated that he had been in the employ of the defendant since 1940 in the capacity of gas service man servicing gas appliances; that late in the afternoon of September 14th he picked up a service order, exhibit D, from the "gas basket" and that he went to plaintiff's residence as requested by the service order and that he went to the basement and opened the valve of the furnace pilot light and lit it to see that it was burning. Referring to the furnace he stated that a vent pipe extended from the furnace through a board partition to the chimney. The entire vent pipe was visible and was properly connected to the furnace and the chimney when he lit the pilot light. Defendant's exhibits B and C are photographs showing the vent pipe in its position when properly connected with the furnace and the chimney. Kredler stated that when he left on September 14th after having lit the furnace pilot light the vent pipe was in place as shown by exhibits B and C. He did not go back to the plaintiff's residence again until the night of October 17th, having been called there by the city patrolman who told him to go to the Borner residence as quickly as possible; that he went directly to the Borner residence, and went into the basement and there met Paul Borner and several other persons, and that shortly thereafter Mr. Gates, the defendant's manager, arrived. The lights had already been turned on by Paul Borner. Kredler then detected the presence of gas fumes and he immediately examined the chimney to see if it was plugged and he found that a pan had been hung over the outlet of the furnace. He then asked Paul Borner "who put this on and what is it doing here", to which Borner replied he did not know and that he would go upstairs and ask his wife, and then left; that Borner returned in a few minutes and he said his wife (Emma Borner) had seen the opening of the furnace and hung the pan over it for some reason. Paul Borner admitted that he went upstairs and talked to his wife, but denied that she said that she hung the pan over the opening of the furnace. Kredler noticed that the whole vent pipe was lying on the floor and he went to work and connected it up in its proper place. In order to do that he had to rip off some boards from the partition between the furnace and the chim-

ney. Referring to September 14th when he lit the furnace pilot light he stated that he made no changes or alterations in the furnace, and he never received any order to make any changes or alterations in the burner or the gas pipes leading into the gas burner, nor was he asked to make any changes or alterations in the furnace on the night of October 17th. He was called to the Borner home a few days later to adjust two gas ranges in the house and that he made the adjustments. Defendant's exhibit G was introduced in evidence showing the work done by him on said gas ranges on October 20th at 3:30 in the afternoon. He stated further that these gas ranges have a gas line and pilot light separate from the gas line and pilot light of the furnace and that the gas ranges and the furnace operate independently of each other.

Alfred Gates, local manager of the defendant company, testified in substance as follows: he had been employed by defendant for 20 years and had been local manager since 1946; that he was such manager during the months of September and October 1951; he identified exhibits D and E as original and duplicate of a service order received September 14th; that shortly after 9:15 P.M. on October 17th he was called to the residence of the plaintiff by her husband Paul Borner and that Borner was concerned about the presence of raw gas from the furnace; that he, Gates, found that there was no raw gas, but that there was an accumulation of gas fumes; that Paul Borner, Christ Schurer and Kredler were there when he came. He denied the statements of Emma Borner that she had called him by telephone or that he had talked to her over the telephone on October 10th or any other time relative to checking or repairing the furnace and that no calls for services from the plaintiff had been received except as shown by exhibits D, E, F and G.

Defendant's exhibit O is the stub of the bill for gas furnished the plaintiff from September 5th to October 3rd and includes the service charge of $1 for lighting the pilot light of the furnace on September 14th.

Defendant's exhibit N is a computation taken from defendant's meter book showing by comparison the amount of gas used by the plaintiff during the months of June, July, August and September. From June 4th to July 6th there were used 6,400 cubic feet; from July 6th to August 3d, 5,000 cubic feet; from August 3d to September 5th, 5,000 cubic feet and from September 5th to October 3d, 12,800 cubic feet. Defendant's exhibit M is a station meteoroligical summary of the weather condition (U. S. Department of Commerce Weather Bureau, Bismarck Station) for the month of September 1951, showing that the month was cool with a high of 83 degrees on September 18th and a low of 19 degrees on September 28th, and that the daily average temperature was 54.5 degrees.

Paul Borner testified that he had a work shop in the basement and that he was in the habit of going down into the basement two or three times a week and that he was in the basement on the 15th day of October and that at that time the vent pipe was in its proper place. It is clear that if the vent pipe was in its proper place and properly connected with the furnace and the chimney on the 15th of October but was down on the 16th of October it must have come down sometime between the 15th of October and 4 or 5 o'clock on the 16th of October. There is of course no question but that the vent pipe was down on the evening of the 17th when the defendant's manager and his helper Mr. Kredler were called to investigate the furnace. Defendant's exhibits C and D, show that the defendant's office received a service call on September 14th and that Mr. Kredler picked up the service order in the "gas basket" and that on the same day he went to the defendant's basement and lit the pilot light. Defendant's exhibit F is the invoice referred to in defendant's exhibit D and E, as No. 10338 dated September 14, 1951 and contains the following notations: "light the furnace pilot, service charge $1.00". This service

charge is shown on defendant's bill exhibit O, the stub of the bill for gas furnished to the plaintiffs between September 5th and October 3d, and is as follows:

| "Class of Service | used | Amount |
|---|---|---|
| ELE–R | 190 | 6.78 |
| GAS–R | 52 | 4.51 |
| | | 11.29 TOT |

GDT   4–24–52

DUE

Oct.

Arrears

1.00 Mdse

12.29 Total

Paul Borner and Mrs Paul Borner
310 2nd Ave. N.E. Mandan, N. Dak."
On the back of the exhibit is the following endorsement.
"Montana-Dakota Utilities Co.
Paid Oct. 9, 1951.
Mandan, N.D."

With reference to this bill, Exhibit O, the plaintiff Mrs. Emma E. Borner testified that she never saw it and that the $1 service charge was put on the bill by defendant after she started her lawsuit.

Defendant's exhibit M, the meteoroligical summary of the weather condition for the month of September, shows that the month was cool with an average daily temperature of 54.5 degrees. Defendant's exhibit N shows that the amount of gas furnished to plaintiff from September 5th to October 3d was 12,800 cubic feet, or more than twice as much as was used during the months of June, July and August. The fact that September was a cool month as shown by defendant's exhibit M, and the increase in the amount of gas used by the plaintiff during that month as shown by defendant's exhibit N, are circumstances tending to show that the plaintiff operated her furnace during September and that the pilot light had been lit on September 14th as shown by defendant's exhibits D, E, and F.

Mr. Gates testified that he had examined the books and the work orders of the defendant and other memoranda in his office; that they have separate files for the customers including the Borners; that he had carefully examined the Borner file and that there were no complaints or service orders received from the plaintiff from September 14th to October 17th, and that there were no complaints or service orders from the plaintiff on Octobor 10th or October 16th or 17th, and that defendant's exhibits D, E, F, G, and O were all taken out of the Borner file.

The vent pipe was in its proper place on September 14th when Kredler lit the furnace pilot light and as Paul Borner testified it was in its proper place on October 15th. On October 17th it was disconnected and lying on the floor. When connected with the chimney and the furnace it must go through a partition between the chimney and the furnace. When Mr. Kredler connected up the vent pipe on the evening of October 17th he first had to rip two or three boards from the partition. If the vent pipe was in proper place on October 15th as testified to by Paul Borner, it is certain that some person had removed it and also boarded up the opening in the partition. It is the contention of the plaintiff that the vent pipe was was taken down and left in that condition by some employee of the defendant between October 15th when Paul Borner was in the basement and October 16th. This we find difficult to believe. There certainly would be no reason for closing the opening in the partition through which the vent pipe had to extend in order to be properly connected to the furnace and chimney.

At the close of plaintiff's case the defendant made a motion for a directed verdict and for dismissal of the action on the

ground that the plaintiff had failed to prove or establish any cause of action against the defendant; that there was no competent evidence in the record of any negligence on the part of the defendant in inspecting or repairing the furnace of the plaintiff prior to the time involved in the complaint, or had failed to put the same in proper working condition. The motion was denied. The defendant renewed its motion for a directed verdict and for dismissal of the action at the close of all of the testimony on the same grounds and upon the specific ground that the evidence was insufficient to sustain a verdict in favor of the plaintiff and against the defendant. The motion was denied.

The plaintiff has challenged the sufficiency of this motion upon the grounds that it does not specify the particulars in which the evidence is insufficient to sustain the verdict. The motion states:

"That the plaintiffs have failed to prove that the defendant was guilty of any negligence or breach of contract or breach of duty; that upon the record, as it now stands the evidence is insufficient as a matter of law, to establish any cause of action or right to recover any damages for negligence which was the proximate cause of any injuries which the plaintiff may have sustained or any damages resulting therefrom; * * *".

While the motion does not point out in detail the particulars in which the evidence is insufficient to sustain the verdict, it does state that the plaintiffs have failed to prove that the defendant was guilty of any negligence or breach of contract or breach of duty sufficient as a matter of law to establish any negligence which was the proximate cause of plaintiff's injuries. Plaintiff's complaint is based wholly upon alleged negligence on the part of defendant's employees and servicemen in failing properly to check and repair the furnace. The import of the grounds as stated in defendant's motion is that there is no evidence in the record of any negligence on the part of defendant, and that the facts and circumstances necessary to prove plaintiff's case are wholly lacking.

In the case of Nicholson v. Roop, N.D., 62 N.W.2d 473, 478 we said:

"If, however, in a case of negligence a specification is made that the evidence is insufficient to show negligence on the part of the defendant, or that under the evidence the plaintiff is conclusively shown to be guilty of contributory negligence, or that he assumed the risk, etc., such a specification is ordinarily sufficient."

The motion before us points out specifically that the evidence fails to establish that the defendant was guilty of any negligence, breach of contract, or breach of duty. If liberally construed we believe that it sufficiently points out the insufficiency of the evidence within the meaning of the adjudicated cases. It may be well to mention that upon the appeal from the judgment there are full specifications of the insufficiency of the evidence which are not challenged.

The appellant assigns numerous errors but more especially in the following particulars.

1. That the evidence is insufficient to sustain the verdict of the jury.

2. That the verdict of the jury in favor of the plaintiff and assessing her damages in the sum of $200.00 "for inconvenience sustained" is not responsive to the issues and the instructions of the court.

We shall first consider the question as to whether the evidence is insufficient to sustain the verdict.

It is the contention of the plaintiff that defendant's service men had been in the Borner basement between October 15th and October 16th and that by reason of their negligence the vent pipe had been disconnected and as a result gas fumes escaped into the several rooms of plaintiff's home causing the injuries to her health as alleged in the complaint.

We shall assume that the telephone conversation between the plaintiff and Mr. Gates took place. This presents the question whether there is any competent evidence that the service men of the defendant were in the Borner basement at any time between the 15th and the 16th of October. Paul Borner testified that the vent pipe was in its proper place on October 15th. It must have been disconnected on the 16th because the plaintiff, Mrs. Borner, became sick the night of the 16th. If the plaintiff is to prevail in this action we must assume that a service man of the defendant was in the Borner basement either on October 15th or October 16th; that he disconnected the vent pipe from the furnace and the chimney, left it on the floor and placed a pan over the furnace outlet while the gas was burning, and then left the premises without giving any notice to the plaintiff or to any of the occupants of plaintiff's residence. That a man with experience in installation of gas furnaces and with knowledge of the injurious effects from inhaling gas fumes would be guilty of such wanton negligence and utter disregard for the safety of the occupants of the building is unreasonable and not worthy of any credence. It is clearly established by the evidence however that on September 14th defendant received a request from Emma E. Borner to light the pilot light of the furnace in her residence and that this was done by Mr. Kredler on the same day. The evidence shows also that no repairs of the furnace were made or needed, either on September 14th or any time thereafter. The evidence shows that the vent pipe had been taken down by someone between the 15th and 16th of October but the record is devoid of any evidence that it had been taken down by any of defendant's service men or employees; to so hold would be pure speculation and conjecture.

It is well settled that on appeal from a judgment entered upon the verdict of a jury the evidence will be considered in the most favorable light to the prevailing party. However, if the evidence is such that under all the circumstances reasonable men could arrive at but one conclusion the issue becomes a question of law for the court. Martin v. Parkins, 55 N.D. 339, 213 N.W. 574; McGregor v. Great Northern Ry. Co., 31 N.D. 471, 154 N.W. 261.

Plaintiff's cause of action was founded upon alleged negligence on the part of the defendant in checking and inspecting the furnace in her residence. We have carefully reviewed the entire record and find no competent evidence of any negligence on the part of defendant; there was therefore no issue of fact for submission to the jury. In view of our conclusion that the evidence is insufficient to establish negligence on the part of the defendant it will not be necessary to consider the form or regularity of the verdict.

The judgment of the district court is reversed and the case is remanded with directions to vacate the judgment and to dismiss the action.

MORRIS, C. J., and BURKE and GRIMSON, JJ., concur.

On Petition for Rehearing

SATHRE, Judge.

Plaintiff has petitioned for rehearing, and contends that the opinion herein is a departure from the rule followed in the recent case of Jacobs v. Bever, N.D., 55 N.W.2d 512. Upon the issues of fact the Bever case is clearly distinguishable from the case at bar. In the Bever case the plaintiff sued the defendant for damages resulting from the latter's negligence. Plaintiff and defendant were riding in defendant's car when the battery cable broke and the car stopped. In order to repair the break it became necessary to get under the car. Plaintiff went under the car and while he was there the car started and he was injured. There was a sharp dispute in the testimony as to whether defendant asked plaintiff to get under the car and whether defendant negligently started the car while the plaintiff was under it. There was therefore a question of fact which was properly submitted to the jury. The jury

returned a verdict for the plaintiff. The defendant moved for judgment notwithstanding the verdict to which upon the record he was not entitled and the trial court correctly overruled the motion.

■ It is the contention of the plaintiff in the case at bar that defendant's employees were in the basement between October 15th and 16th and that they negligently disconnected the vent pipe of the furnace and left it lying on the floor. There is no evidence in the record that any of defendant's employees were in plaintiff's basement between September 14th when the pilot light was lit by Kredler and the evening of October 17th, when Gates and Kredler were called by Paul Borner. To so hold would be pure speculation wholly unsupported by any credible evidence. The only person, who, according to his own testimony, was in the basement on October 15th was Paul Borner, husband of the plaintiff. The record presents no issue of fact for submission to the jury on the question of defendant's negligence. It is well settled that negligence or contributory negligence is a question of fact to be determined by the jury; but when reasonable men can draw but one conclusion from the evidence the question becomes one of law for the court. Martin v. Parkins, 55 N.D. 339, 213 N.W. 574; Ekren v. Minneapolis, St. P. & S. S. M. R. Co., N.D., 61 N.W.2d 193.

Plaintiff further contends that defendant's motion for directed verdict upon the grounds of insufficiency of the evidence was defective in that it did not specify in what particulars the evidence was insufficient. This matter was given careful attention in the opinion herein and need not be considered further here.

Rehearing denied.

MORRIS, C. J., and BURKE and GRIMSON, JJ., concur.